# CHARLESTON.

TRIPLETT *v.* LAKE *et ux.*

(DENT, JUDGE, *absent.*)

Submitted February 3, 1897—Decided April 21, 1897.

1. VENDOR'S LIEN—*Deed—Interest.*

    In enforcing a vendor's lien for purchase money, the court, in rendering its decree, will ascertain the aggregate amount of principal and interest due on the notes executed for such purchase money, for which the vendor's lien is retained, to the date of the decree, and decree that interest be paid on such aggregate from the date of the decree. (p. 436.)

2. VENDOR'S LIEN—*Decree—Amendment of Decree.*

    If the court, in enforcing such vendor's lien, aggregates the amount of principal and interest to the date of the decree, and then decrees that the defendants pay interest on such aggregate amount for several months prior to the date of the decree, this is such a mistake as may be safely amended on motion, under section 5 of chapter 134 of the Code, and which should be amended on motion to the circuit court. (p. 440.)

3. DECREE—*Appeal—Amendment after Appeal.*

    If, after an appeal to this Court has been allowed, such decree be amended on motion in the circuit court, this Court will affirm the decree as amended. (p. 440.)

Appeal from Circuit Court, Taylor county.

Bill by Anthony Triplett, administrator of Washington A. Lake, against John M. Lake and Isabel Lake. Decree for plaintiff, and defendants appeal.

*Affirmed.*

J. H. HOLT, for appellants.

W. R. D. DENT, for appellee.

ENGLISH, PRESIDENT:

This was a suit in equity instituted in the Circuit Court of Taylor county, at March rules, 1891, in which Anthony Triplett, administrator of Washington A. Lake, deceased, was plaintiff, and John M. Lake and Isabel Lake defendants. The complainant in his bill alleges that he is the administrator of the estate of Washington A. Lake, de-

ceased, and exhibits the order appointing him such administrator, and further alleges: That said decedent at the time of his death held the following notes against the following parties, to-wit: One note against the defendants, bearing date December 10, 1877, for three hundred and four dollars and fifty cents; one note against the defendants, bearing same date, for five hundred dollars; one note against defendants, bearing same date, for five hundred dollars; one note against defendants for five hundred dollars, same date; also, one note against the defendants, same date, for the sum of four hundred and ninety dollars. All of which notes bear interest from date, and were each signed by both of said defendants, and were for the balance of purchase money due on a certain tract of eighty-four acres of land conveyed by said Washington A. Lake and wife to said defendant Isabel Lake on the 10th day of December, 1877; by deed with covenants of general warranty, and to secure all which said notes a lien was expressly retained in said conveyance on said land (a copy of which deed is exhibited). That, in addition to the foregoing notes, said decedent held also the following notes, to-wit: One note against John M. Lake, defendant, dated the 29th day of April, 1874, for one hundred and fifty-five dollars and eighty cents, with interest from date; also, another note against J. M. Lake and certain sureties, to-wit, A. Armstrong and plaintiff, for eight hundred dollars, bearing date the 5th day of February, 1887, with interest from date; also, a certain note on Walter, Feltner & Co. for four hundred dollars, dated November 4, 1887, with interest from date; also, another note on Wesley Sinsel for one hundred and fifty dollars; also, a note for five hundred dollars signed by George H. Smith; and other notes, the amounts and makers of which are to the plaintiff unknown. That at the time of his death the decedent had all of said notes at the house of said defendants, who immediately wrongfully seized and took possession of the same, and refused to surrender them to the plaintiff or pay him the amount thereof, but illegally detain the same, in fraud of and in defiance of plaintiff's rights as such administrator. And plaintiff prays that said defendants be required to surrender and file all of said notes, and all other notes and papers belong-

ing to said decedent's estate, in the papers in this cause, and that the plaintiff may have a decree against the defendants for said purchase money, and that said land may be sold, and said purchase money and the costs of this suit may be paid, *etc.*

The defendants filed separate answers to said bill. Said J. M. Lake admits that on the 3d day of May, 1890, he came into possession, through his wife, Isabel Lake, of the following notes: Three notes of five hundred dollars each, and one note for four hundred and ninety dollars, which notes were part consideration for said eighty-four acres of land. But he denies that said three hundred and four dollars and fifty cent note mentioned in said bill was a part consideration for said land, or that any lien was retained for the same in the deed to said Isabel. That he never was in possession of said three hundred and four dollars and fifty cent note, but, by an agreement and contract hereinafter referred to, he is entitled to its possession. It is also true that he came into possession of said note of one hundred and fifty-five dollars and eighty cents dated April 29, 1874, and of the said note for eight hundred dollars, dated the 5th of February, 1887; but he denies that the plaintiff has any right to demand or have the possession of said notes, or any of them, for the reason that during his said father's lifetime, to-wit, on the 7th day of December, 1889, he and his said father had a settlement and a contract by which his said father agreed to deliver up to him and cancel all of said notes, and respondent, on his part, agreed to support his said father, and furnish him with medicine and such medical treatment as he might need during his life, and to execute his new note for one thousand dollars, and a deed of trust upon said eighty-four acres of land, in which trust his wife, Isabel Lake, was to join, to secure said notes. That the said contract was reduced to writing ane signed by respondent and his said father, but was never in respondent's possession, and is not now, and he is unable, therefore, to exhibit it to the court. That respondent was always ready and willing to execute said note and trust as provided for in their said agreement, but before it was done his father (after going over all of their business relations in the past, and in order to make him equal with the other heirs, and in consideration of large

amounts of money advanced by respondent and paid to the credit of his said father), the said Washington, released him from the payment of said one thousand dollars, and on or about the 3d day of May, 1890, delivered up to respondent all of the aforesaid notes to be canceled; and that said notes have been destroyed, as is the custom of this respondent with such papers, except the three hundred and four dollars and fifty cent note, which was settled, but not delivered with the other notes, but which his said father promised to deliver, but never did. That he has no knowledge of said Walter, Feltner & Co. note for four hundred dollars, except that he was informed by his father in his lifetime that he intended to transfer it to said Isabel Lake, and he afterwards saw it in her possession; but respondent never at any time received said note. That he knows nothing of the Wesley Sinsel note for one hundred and fifty dollars, and does not believe any such note ever existed. He denies that he took into his possession the G. H. Smith note for five hundred dollars in favor of his father, and avers that it is in possession of the plaintiff, who has instituted proceedings to collect the same. And he denies that he seized illegally any of the papers or other property of his father.

Said Isabel Lake in her answer to said bill admits that on the 3d day of May, 1890, she came into possession of said three five hundred dollar notes, and the said four hundred and ninety dollar note, and the said eight hundred dollar note, by delivery of the same to her by the said Washington A. Lake in accordance with a contract made and entered into after a settlement between the said Washington and her said husband, John M. Lake; the said Washington directing her to destroy said notes at the time of their delivery, which she did by burning them. But by the provisions of said contract the said Washington was to deliver also the said note of three hundred and four dollars and fifty cents, but that said note was not delived with the others; the said Washington promising to deliver it later, but he never did so. She denies that any lien was retained for the three hundred and four dollar and fifty cent note, or that it was a balance of purchase money for said eighty-four acre tract of land. She admits the possession of the Walter, Feltner & Co. note for

four hundred dollars, but claims it was regularly transferred to her by the said Washington Lake long before his death, in consideration of services rendered to him and kindness extended to him for a period of over twenty-five years; and she denies that the plaintiff has any right whatever to the possession of said notes, or any of them. She denies any knowledge of the one hundred and fifty dollar note referred to in the bill as the Wesley Sinsel note, or of the George H. Smith note for five hundred dollars, but says she is informed and believes that it is in the hands of plaintiff, who was carrying on legal proceedings at the time this suit was brought to collect the same. She denies that said Washington Lake at the time of his death had any of his notes or papers at her house, but avers that before his death took place, at the house of the plaintiff, the plaintiff demanded and took to his house every dollar's worth of property of every kind, that she had any knowledge of, belonging to the said Washington A. Lake. That she never visited plaintiff's house afterwards, and the charge that she wrongfully took any of the said property, notes, or otherwise, is false. That, by the provisions of said contract between the said John M. Lake and the said Washington A. Lake, the said John M. was to give his note for one thousand dollars, and a deed of trust was to be executed on said eighty-four acres of land, in which trust she was to join with her said husband, and it was agreed that the same was to be executed within thirty days. That she was always ready and willing to execute said deed on her part, and is still willing to do so, if it should appear to the court right and equitable for her to do so; but she says that, before said note was made or said deed prepared, the said Washington, in consideration of large amounts of money paid for and advanced to him by her said husband, released her said husband from the payment of the said one thousand dollars, and on or about the 3d day of May, 1890, delivered up to respondent all of the papers and notes he held against her and her said husband, except the said note of one hundred and fifty-five dollars and eighty-cents, which was settled and delivered to her said husband before, and the three hundred and four dollars and fifty cents, which was also settled in said contract, but which was not delivered; and she destroyed them as

aforesaid, believing them to be of no further use, *etc.*, in compliance with his directions.

To these answers the plaintiff replied generally. A large number of depositions were taken by both plaintiff and defendants, bearing principally upon the question of the mental capacity of said Washington A. Lake, and his ability to transact business, at the date of the agreement mentioned in the defendants' answers. On the 12th day of January, 1894, a decree was rendered in the cause, in which it was ascertained that the plaintiff had a vendor's lien against the property mentioned, which, with the interest aggregated thereon to the 12th day of January, 1894, the date of the decree, amounted to the sum of four thousand eight hundred and eighty-two dollars and seventy-five cents, and it was decreed that unless the defendant Isabel Lake, or some one for her, do pay said sum, with interest thereon from the 11th day of April, 1893, together with the costs of said suit, within thirty days from the rise of the court, a special commissioner therein appointed should sell the tract of land aforesaid upon the terms therein prescribed; and from this decree the defendant obtained this appeal.

Now, in determining the questions raised by this record, we may inquire, first, whether the allegations contained in the defendants' answers set forth such new matter as would constitute a claim for affirmative relief, which, if not controverted by a special reply in writing, should, for the purpose of the suit, be taken as true, and no proof thereof required. These answers deny that the note for three hundred and four dollars and fifty cents in the bill mentioned was part of the purchase money for said eighty-four acre tract of land, or that any vendor's lien was retained to secure the payment of the same, but they say that the three five hundred dollar notes (when they should have said "four," as there are four of them, and the word "three" is evidently used in both answers by mistake) and the four hundred and ninety dollar note were liens upon said eighty-four acres of land. The said defendants allege that on the 7th day of December, 1889, the said Washington A. Lake entered into a written contract with his son, J. M. Lake, whereby, in consideration of his said son furnishing him with a home and keeping and supporting him

during the remainder of his life, he released said J. M. Lake and Isabel Lake from the payment of said purchase money, with the exception of one thousand dollars, which was to be secured by a deed of trust upon the land. To these answers a general replication was filed, but this general replication would not be sufficient to put in issue these allegations, if they were such as entitled the defendants to affirmative relief; but, when we look to the substance of these answers, we can find in them nothing further than an alleged contract on the part of W. A. Lake to release the lien asserted in the bill in consideration of one thousand dollars to be secured by deed of trust upon the land, and other valuable considerations. This we can only regard as matter of defense to the lien sought to be enforced in the bill, and when such is the case the allegations of the answer which are relied on by way of defense to the allegations contained in the bill are put in issue by the general replication. So, in the case of *Foutty* v. *Poar*, 35 W. Va. 70 (12 S. E. 1096), this Court held that: "A claim for recoupment in an answer does not make such answer one setting up new matter calling for affirmative relief, and no special reply thereto is necessary; but such claim is only matter of defense to the bill, and is met by a general replication." In the case of *Cunningham* v. *Hedrick*, 23 W. Va. 579, it was held that: "Under the operation of sections 35 and 36 of chapter 125 of the Code, where the answer contains material allegations constituting a claim for affirmative relief, and no 'reply in writing' is filed, but a general replication, and the cause has been heard upon the pleadings thus made and the proofs taken, if the record shows that it is not such a case as would, before the passage of said sections, have made the filing of a cross bill necessary in order to entitle the defendant to the relief sought, the decree will not be reversed because no reply in writing was filed." This question was also before this Court in the case of *Smith* v. *Turley*, 32 W. Va. 14 (9 S. E. 46), in which it was held that: "An answer containing new matter calls for a reply in writing, under sections 35 and 36 of chapter 125 of the Code, only when such new matter, in its nature, as applied to the cause, calls for affirmative relief against some of the parties, and is not simply matter of defense of plaintiff's case; and it

may, by its matter, call for such reply only from certain of the parties, and not from others, and only as to part of its matter, and not as as to the residue thereof." And again, in the case of *Moore* v. *Wheeler*, 10 W. Va. 35, it was held that: "An answer alleging new matter constituting a claim to affirmative relief in the suit, in the purview and meaning of the thirty-fifth section of chapter 125 of the Code, was intended simply to be allowed in lieu of a cross-bill in the cause as to such new matter, and not to make any other change in the practice as to the pleadings in courts of equity." It was not necessary, as we think, in the case under consideration, in the absence of said sections, to have filed a cross bill, in order to set up the contract (alleged in said answers) to release the vendor's lien sought to be enforced in the bill, but it was matter which could be set up by way of defense in the answer, and was properly put in issue by the general replication; and the court appears to have held (as we think, properly) that the defendants have failed to sustain the allegations of their answers by competent testimony, and has held that the plaintiff was entitled to the enforcement of the vendor's lien reserved on the face of said deed.

The court in this case proceeded to enforce the vendor's lien. The cause was not referred to a commissioner to ascertain the amount of the same, but the court found (by what process it is difficult to determine) that it aggregated, including principal and interest to the 12th day of January, 1894, the sum of four thousand eight hundred and eighty-two dollars and seventy-five cents. Now, if we omit from the calculation the note for three hundred and four dollars and fifty cents, which is alleged in the bill to constitute a part of said vendor's lien, but which is not mentioned in the deed as part of the purchase money, and for which no lien was retained, and also omit the note for two hundred and thirty-six dollars, which is mentioned in the deed, and to secure which a vendor's lien was retained, but which was not mentioned in the bill as being secured by a vendor's lien, the interest and principal would aggregate to the 12th day of January, 1894, four thousand eight hundred and ninety-three dollars and sixty-eight cents, instead of four thousand eight hundred and eighty-two dollars and seventy-five cents, as was ascertained by the court; and

while it is true that this is an inaccuracy of which the defendants could not complain, for the reason that the error was not to their prejudice, yet' the court in its decree did, as we think, commit an error to the prejudice of the defendants, of which they complain, in this : that after finding the aggregate of the principal and interest of said purchase money to the 12th day of January, 1894, to be four thousand eight hundred and eighty-two dollars and seventy-five cents, the court decreed that unless the said Isabel Lake, or some one for her, do pay the said sum of four thousand eight hundred and eighty-two dollars and seventy-five cents, with interest from the 11th day of April, 1893, together with the costs of the suit, that a special commissioner therein named should sell after thirty days the property described in the bill, upon the terms set forth in said decree.   It is provided by our statute (section 16 of chapter 131 of the Code) that:  "In all cases where a judgment or decree is rendered or made for the payment of money, it shall be for the aggregate of principal and interest due at the date of the verdict if there be one, otherwise at the date of the judgment or decree, with interest thereon from such date except in cases where it is otherwise provided."  So in the case of *Hawker* v. *Railroad Co.*, 15 W. Va., 644, GREEN, PRESIDENT, delivering the opinion of the Court, said :  "The court erred in giving judgment for interest on damages found by the jury prior to the day the judgment was actually entered ; that is, the 7th day of May, 1878.   The judgment entered by the circuit court erroneously gave interest from the first day of the term at which the judgment was entered ; that is, from April 18, 1878."   Again, in the case of *Lamb* v. *Cecil*, 25 W. Va. 288, JOHNSON, PRESIDENT, in the opinion of the Court, says :  "It was error to decree interest on the aggregate of principal and interest from a time anterior to the rendition of the decree,"—citing *Fowler* v. *Railroad Co.*, 18 W. Va. 579.   He adds that, while this error would require the decree to be corrected, yet, as the difference is not sufficient to give this Court jurisdiction, it would, if there were no other error, be reversed, with costs to the appellee, and a decree entered for the correct amount; citing *Bee* v. *Burdett*, 23 W. Va., 744, which was a suit to enforce a vendor's lien, and in which it was held "that in

a controversy merely pecuniary, where the alleged errors against the appellant exceed one hundred dollars, but this Court finds an error of less than one hundred dollars, if such error be merely clerical this Court will correct and affirm the decree, but, if it be judicial, the decree will be reversed, with costs to the appellee in either event." In the case we are considering, however, the decree was for interest on the sum of four thousand eight hundred and eighty-two dollars and seventy-five cents for nine months and one day previous to the date of the decree, which would amount to a little more than two hundred and twenty dollars; and this is not a mere clerical error, but is a judicial error. The nine months having already elapsed at the date of the decree, a decree was entered for something over two hundred and twenty dollars more than the plaintiff was entitled to, if the court had been correct in finding four thousand eight hundred and eighty-two dollars and seventy-five cents to be the aggregate amount to which the plaintiff was entitled. In the case of *Payne* v. *Webb*, 23 W. Va. 558, which was a suit brought to enforce a vendor's lien, this Court held: "It is the duty of the court, before it decrees a sale of land, to fix definitely both the amounts and priorities of the liens on it, and the failure to do either will be ground for the reversal of the decree." Now, if we were to proceed to correct this decree as to the amount of the lien the plaintiff was entitled to enforce against the land in the bill mentioned, we would look first at the allegations of the bill, and would there find among the other notes a note for three hundred and four dollars and fifty cents dated December 10, 1877, which, with interest added to the date of the decree, would amount to a little over six hundred dollars, which is alleged to be for part of the purchase money and a lien on the land, which allegation, however, is denied by the answers; and the only proof of the notes constituting a vendor's lien on said land is the deed exhibited with the bill, which mentions and describes no such note as the three hundred and four dollars and fifty cents, but does describe a note for two hundred and thirty-six dollars, dated December 10, 1877, and payable on or before the 10th of December, 1878, which note, with sixteen years and one month interest added, would amount to nearly four hundred and seventy-

five dollars. Yet both of these notes appear to have been omitted in making the calculation and ascertaining the aggregate on which to base the decree, and while the defendants can not complain that these notes, or either of them, have been omitted from the calculation, they can complain that nine months' illegal interest, amounting to two hundred and twenty dollars and fifty-four cents, has been added to an aggregate improperly ascertained, and that their land has been decreed to be sold for the aggregate so improperly ascertained, with said illegal interest added. This was not a clerical error such as could have been corrected under the statute on motion, but was a judicial error, for which the cause must be reversed and remanded, with costs to the appellants.

## ON REHEARING.

This case was before this Court and was submitted on the 11th of September, 1895; an opinion therein having been handed down on the 24th day of January, 1896. A rehearing was applied for and allowed on the 1st day of February, 1896. The cause was reargued and resubmitted on February 3, 1897. The sole ground upon which the opinion was based, reversing the decree in the original cause, was that the decree complained of, after aggregating the principal and interest due upon the claim asserted in the bill, gave interest thereon for a period nine months and one day anterior to the date of the decree, which interest amounted to a little more than two hundred and twenty dollars. This was held to be a judicial error, and the decree complained of was on this account reversed. Since said opinion was handed down, to wit, on the 18th of July, 1896, the plaintiff, after giving proper notice, moved the circuit court of Taylor county to correct said decree under the provision of chapter 134 of the Code, which motion was sustained, and which decree was corrected so as to give interest on the aggregate amount of the principal and interest due on the claim asserted in the bill from the date of said decree. The decree having been corrected as above stated, the question submitted for our consideration is whether it was such an error as could have been corrected on motion by the same court, and was properly corrected by the circuit court.

At the time the opinion in this cause was handed down, I was of opinion that this error was a judicial one, and not a clerical error which could have been corrected under any of the sections of chapter 134 of the Code; but, upon a closer examination of the provisions of the statute and the authorities relied upon in the petition filed for the rehearing of this cause, my conclusion is that I was mistaken in holding the error upon which the opinion was based to have been a judicial one, and not a clerical error such as could have been corrected on motion, under the statute. Having arrived at this conclusion, the question is what effect the correction of the judgment by the circuit court after the rehearing was allowed in this case should have upon the decree now to be entered therein. In determining this question, we look first to see whether the appellants at the time the appeal was applied for were in a condition to ask this Court for a reversal of the decree complained of. If the only error appearing on the face of the record was such as could have been corrected in the circuit court, should their appeal have been entertained? In reply to this question, section 6, chapter 134, of the Code, provides that: "No appeal, writ of error or supersedeas shall be allowed or entertained by an appellate court or judge for any matter for which a judgment or decree is liable to be reversed or amended on motion as aforesaid by the court which rendered it or the judge thereof until such motion be made and overruled in whole or in part. And when an appellate court hears a case wherein an appeal, writ of error or supersedeas has been allowed, if it appear that, either before or since the same was allowed the judgment or decree has been so amended, the appellate court shall affirm the judgment or decree unless there be other error." Under section 5 of the same chapter, it is provided that: "The court in which is rendered a judgment or decree in a cause wherein there is in a declaration or pleading or in the record of the judgment or decree any mistake, miscalculation, or misrecital of any name, sum, quantity or time, when the same is right in any part of the record or proceedings * * * whereby such judgment or decree may be safely amended, the judge thereof may on motion of any party amend such judgment or decree according to the truth and justice of the case after reasonable notice to

the opposite party." Having concluded that the error complained of upon which the opinion in this case was based was not a judicial error, but a clerical error, the appellants should have applied to the circuit court, under chapter 134 of the Code, to correct the same, instead of bringing the case here by appeal. This was a controversy merely pecuniary, and, upon the question presented by the record, we find that this Court has held in the case of *Conner* v. *Fleshman*, 4 W. Va. 693 (point 5 of the syllabus), that: "A judgment rendered in June, 1870, which provides for the recovery of interest from 1866, which is held to be erroneous under sections 14 and 16, chapter 131, p. 627, of the Code; but such error can be corrected in the court below, by section 5, chapter 134, and in this Court, by section 6 of the same chapter, and it was accordingly corrected." Also, in the case of *Bee* v. *Burdett*, 23 W. Va. 744 (second point of syllabus). it was held that: "In a controversy merely pecuniary, where the alleged errors against the appellant exceed $100, but this Court finds an error of less than $100, if such error be merely clerical this Court will correct and confirm the decree; but, if it be judicial, the decree will be reversed, with costs to the appellee in either event." Again, in the case of *Lamb* v. *Cecil*, 25 W. Va. 288 (first point of syllabus), it was held that: "While it was error to give interest upon the aggregate of principal and interest from a time anterior to the decree, yet if the difference in amount is less than $100, and that is the only error appearing by the record, the decree will be reversed, with costs to the appellee, and a decree will be entered for the proper amount." In the case we are now considering the mistake was one which might have been easily corrected by reference to other portions of the record, as has been shown by the subsequent action of the circuit court in correcting the same. This correction might have been made on motion by the appellants before bringing the case here, and having failed to move in the circuit court to correct said clerical error, and the same having been subsequently corrected on motion of the appellee, the decree as corrected is affirmed, with costs to the appellee.

*Affirmed.*