# CHARLESTON

FULMER COAL CO. *v.* MORGANTOWN AND KINGWOOD RAILROAD COMPANY.

Submitted March 7, 1905.    Decided March 28, 1905.

1. CONTINUANCE—*In Discretion of Trial Court.*
    The action of a trial court, in passing upon a motion for a continuance, will not be reversed, unless plainly wrong. (p. 474.)

2. DEPOSITIONS—*Refusal to Read.*
    A case where the court properly refused to read depositions taken during the term, and after the cause had been submitted for decision upon its merits. (p. 474.)

3. PLEADING—*Affirmative Relief Asked in Answer—Burden of Proof.*

Where an answer is filed praying for affirmative relief, and, in addition to denying the allegations of the bill, sets up only such new matter as could be set up in defense to plaintiff's bill, no special reply under section 35, chapter 125, Code, is required, but a general replication puts defendant upon proof of such new matter. (p. 478.)

COX, JUDGE, Absent.

Appeal from Circuit Court, Monongalia County.

Bill by the A. C. Fulmer Coal Company against the Morgantown and Kingwood Railroad Company. Decree for defendant and plaintiff appeals.

*Modified.*

H. M. RUSSELL and GOODWIN & REAY, for appellant.
W. S. MEREDITH and COX & BAKER, for appellee.

SANDERS, JUDGE:

On the 30th day of January, 1904, the appellant presented its bill to the Judge of the circuit court of Monongalia county, in vacation, alleging that on January 26th, 1902, an agreement was entered into between George C. Sturgiss, the Morgantown and Kingwood Railroad Company, and A. C. Fulmer, by which Sturgiss leased to Fulmer all the coal underlying a tract of land owned by him in Monongalia county, at a stipulated royalty; that under the contract, which was afterwards assigned by Fulmer to the appellant, the mining of coal was to begin on the 1st day of May, 1902, by which time the railroad company agreed to construct a branch line from its main line to the land covered by the agreement, for the purpose of transporting the coal mined from said lease; that soon after the making of the contract, Fulmer made arrangements to carry it out on his part; that the defendant constructed its branch from its main line to the land which Fulmer had leased, as it had agreed to do, and, for a short time after mining had begun, it transported the coal mined by the plaintiff; but that the business of the plaintiff had not progressed very far until the railroad began to break its agreement, and failed to furnish the cars necessary for the transportation of said coal, and finally substantially abandoned the operation of its said branch. The bill prayed that the defendant might be required to carry out its agreement, and an injunction

was granted by the Judge of the circuit court, restraining the defendant from abandoning the branch railroad, and from disturbing or removing any part of it until the further order of the court.

The defendant filed its answer at March rules, 1904, denying most of the material allegations of the bill, and setting up the fact that on the 21st day of August, 1903, George C. Sturgiss and A. C. Fulmer entered into another contract, by which it was agreed that the minimum amount of coal to be mined as provided in the contract of January 26, 1902, was to be made dependent upon the ability of Fulmer and Sturgiss and the railroad companies that might engage in the transportation of coal and coke from the mines operated by Fulmer, to furnish cars in sufficient number for the use of Fulmer in the shipment of coal and coke from his said mines, and that the railroad company was not a party to said contract, and that Sturgiss had no right to act for it in the making thereof. The defendant also exhibited a resolution of its stockholders, passed on November 7, 1903, declaring that the company would no longer operate said branch railroad, on account of the abandonment of the contract by Fulmer; and the answer prayed that the contract be declared null and void; that the relief prayed for in the plaintiff's bill be denied; that the injunction be dissolved; that the answer, for the purpose of the affirmative relief prayed for, be treated as a cross bill, and for general relief.

After the answer was filed, nothing further was done in the cause until the first day of the June term of the circuit court, June 14, 1904, on which date the defendant gave written notice to the plaintiff that it would, on June 18, move the court to dissolve the injunction, and also move to submit the cause for hearing, and, on June 18, the defendant made such motion, and the plaintiff, by its counsel, stated that it desired to file an affidavit for a continuance of the cause, and, on motion of the plaintiff, leave was granted, it until Monday morning, June 20, 1904, to file said affidavit and the further hearing of the motion to submit the cause and dissolve the injunction was continued until a future day of the term. On the 23rd day of June, 1904, both parties appeared in court, and the defendant insisted upon its motion theretofore made to submit the cause for hearing upon its merits and to

dissolve the injunction, and thereupon the plaintiff moved the court to continue the hearing of the cause for the purpose of enabling it to take depositions in support of the allegations of its bill, and filed in support of said motion several affidavits. The motion of the plaintiff to continue the cause was overruled, and, on motion of the defendant, the cause was, by an order entered, submitted to the court for hearing and determination upon its merits, upon the bill of the plaintiff and exhibits filed therewith, the answer of the defendant and exhibits filed therewith, and general replication to said answer, then filed by leave of court, and upon the orders and decrees theretofore entered, and the court fixed Wednesday, June 29, to hear arguments of counsel.

After the case had been set for argument, the plaintiff gave notice that it would take depositions of witnesses, and on Saturday, June 25th, began the taking of depositions, which were completed on the following Monday; and on June 30th the plaintiff tendered the depositions, and asked that they be read. Objection was made by the defendant to the reading of the depositions on the ground that they were taken after the motion of the plaintiff for a continuance of the cause had been overruled, and after the cause was submitted for decision, and for other reasons. The court sustained the exceptions to the depositions, and refused to allow same to be read. The plaintiff asked for a continuance in order to retake said depositions, but this was refused. And the court, proceeding to determine the case, dissolved the injunction awarded in vacation, dismissed the plaintiff's bill, and canceled the contract first above mentioned, as prayed for in the defendant's answer; and from this decision the plaintiff appealed.

The plaintiff complains of the action of the circuit court in overruling its motion for a continuance of the cause and in refusing to read its depositions.

It will be observed that the bill was filed at February rules, and the answer of the defendant was promptly filed at the next rules, and nothing further was done in the cause until the next June term of the court, and on the first day of said term, it being the 14th day of June, the defendant gave notice to plaintiff that on the 18th day of June it would move the court to dissolve the injunction and submit the case for hear-

ing, and on the last named date the defendant did move to dissolve the injunction and to submit the cause upon its merits, and at this time the defendant asked to have the hearing upon the merits of the cause, continued, and tendered in support of said motion several affidavits.   The motions were passed upon on the 23rd day of June, 1904, at which time an order was made refusing to continue the cause, and submitting the same for final hearing upon its merits, and fixing June 29th as the time for the argument thereof,  After the cause had been submitted and a day fixed for  the argument, the plaintiff proceeded to give notice and take depositions, on the 25th and 27th days of June, and on the 30th, when the defendant asked to proceed with the hearing and argument,. the plaintiff presented, and asked to have read upon the hearing, said depositions, to the reading of which the defendant objected, and filed five exceptions to the same, endorsed on the depositions.   The exceptions to the depositions were sustained, and the court declined to read them upon the hearing. The only excuse the plaintiff offers for not having taken the depositions and not being ready to submit the cause is that it was misled by the defendant; that its agents, officers and servants induced the plaintiff to believe that the case would be settled, and no depositions would be required.   The Judge of the circuit court handed down a written opinion in this cause, in which he says: "If this contention were sustained by the proof, the plaintiff would be entitled to a continuance, or even to have the depositions read at this time, but the proof discloses no such facts," and, upon an examination of the affidavits, we are forced to the same conclusion reached by the circuit court.   Therefore, this contention of the plaintiff, being without proof to support it, and being the only reason given for the continuance, the court committed no error in overruling this motion.   The plaintiff had more than two months after the defendant's answer was filed, within which to take its depositions.   It not only did not take any depositions, but the record fails to disclose that the slightest effort was made to do so, and there is no excuse given why it was not done. It certainly would be a very dangerous rule for this Court to lay down, to say that a circuit court had committed a reversible error in refusing to continue a case, where the issue had been made up at rules, and after which the plaintiff had been

given more than two months within which to take depositions, when the plaintiff offers no excuse, and shows no diligence on his part. "Inasmuch as evidence in chancery in many jurisdictions, as in Virginia and West Virginia, for instance, is brought into court by means of depositions, and as depositions can be taken in the Virginias at any time and anywhere after the bill has been filed, the continuance of a cause to enable a party to take proof, must necessarily depend upon the question whether it could have been procured by taking the deposition or depositions, by the use of due diligence, before the case is called for hearing; and in cases of this character the courts must be governed by the varying facts in each particular case. The affidavit in such case ought to show the name of the witness whose evidence is desired; that the evidence of such witness is material; that the party asking for the continuance cannnot prove the same facts by any other witness, and that he cannot safely have the cause heard in the absence of such evidence, and that he has used due diligence to procure the deposition of such witness, setting forth the facts constituting such diligence." Hogg's Eq. Pro., sections 466 and 473; *Buster* v. *Holland*, 27 W. Va. 535; *Wilson* v. *Kochlein*, 1 W. Va. 145; *Tompkins* v. *Burgess*, 2 W. Va. 187; *Dimmey* v. *R. R. Co.*, 27 W. Va. 32; *Nash* v. *Upper Appomattox Co.*, 5 Grat. 332; *Myers* v. *Trice*, 86 Va. 835. Upon any ground, and under all the circumstances surrounding the case, the matter of continuance rests in the sound discretion of the trial court, and unless it clearly appears that such discretion has been abused, the action of the court in overruling a motion for a continuance will not be disturbed. *Marmet* v. *Archibald*, 37 W. Va. 778; *Smith* v. *Knight*, 14 W. Va. 749; *Riddle* v. *McGinnis*, 22 W. Va. 253; *Davis* v. *Walker*, 7 W. Va. 447; *Harman* v. *Howe*, 27 Grat. 676.

What has been said as to the continuance also applies to the ruling of the court in refusing to read the depositions. But the plaintiff insists that under section 35, chapter 130, Code, the depositions should have been read. This section provides: "In a suit in equity, a deposition may be read if returned before the hearing of the cause, although after an interlocutory decree, if it be as to a matter not thereby adjudged, and be returned before a final decree." At the time the depositions were asked to be read, there had been no in-

terlocutory decree entered in the cause. and that statute may, therefore, be read without regard to that portion which relates to an interlocutory decree, and, read in that way, it provides that any deposition may be read if returned before the hearing of the cause, and before final decree. This statute has been construed by the court of appeals of Virginia, in *Richardson* v. *Duble, et al.*, 33 Grat. 730, and also by this Court in the case of *Buster* v. *Holland*, 27 W. Va. 510. "If no interlocutory decree has been rendered, or even though one has been rendered, a deposition taken and returned before a final hearing as to any matter not adjudicated *may* be read. But the right is not an absolute right. The statute does not say that the deposition shall be, but it *may* be read. Such a construction would be but a premium for negligence and would place it in the power of one or the other of the parties, in many cases to protract litigation almost indefinitely. Whether testimony thus delayed will be heard, must in every case depend upon a sound judicial discretion to be exercised upon the facts of the case, the nature of the evidence, the reasons given for the delay, and a variety of circumstances which must be adjudged as they arise. The maxim that the law assists those who are vigilant, not those who sleep over their rights, applies not only to the operation of statutes, but to the action of suitors in the conduct of their cases." *Richardson* v. *Duble, et al., supra.*

"But as to any matter not adjudicated, if the deposition be taken and returned upon a final hearing, it *may* be read; but the right to have it read is not an absolute right. This statute does not say that the deposition shall be read, but only says it *may* be read." *Buster* v. *Holland*, 27 W. Va. 537.

In the case here, the depositions were taken during the term of court at which the case was tried, and the notice to take was not given until after the court had overruled the motion to continue, and the case had been actually submitted for decision, by an order entered showing that fact. The statute certainly does not mean when it says, "returned before the hearing of the cause, and before final decree," to authorize a party to the cause, after the cause has been actually submitted for decision, to then proceed to take depositions, with the absolute right to have them read. If the request to read the depositions in this case had been granted, it

would necessarily have compelled the defendant to take a continuance of the cause, thereby permitting the plaintiff to force a continuance, which the court had already very properly ruled, that it was not entitled to. In a proper case, a deposition taken during the term of court at which the case is tried should be read, but, when this is asked to be done, strong and cogent reasons should be given for not having procured the evidence sooner; but I doubt if, in any case, a deposition should be read when taken after a motion to continue has been overruled, and the case submitted for hearing upon its merits. The reading of a deposition taken at such time would, in most cases, force the opposite party to take a continuance for time to reply, and a continuance might seriously injure such person. The court must consider the interest of both sides to the controversy. It often happens that delays are ruinous. The law does not and should not prevent a deposition from being read simply because taken at the term at which the cause is to be heard, but whether or not such delayed testimony can be read must depend upon the sound judicial discretion of the chancellor, to be exercised upon the facts of the case, the nature of the evidence, the reasons for the delay, and all the circumstances of the case.

This brings us to the consideration of the case upon its merits; first, upon the state of the pleadings, should the plaintiff's bill have been dismissed; and, second, was the defendant entitled to have the contract canceled. This being a suit for the specific performance of a contract with dependent covenants, it became necessary in the bill to allege the performance thereof on the part of the plaintiff, and, if not performed, its willingness, readiness and ability to do so; and also the failure of the defendant to execute it on its part. These allegations being made, and being material and necessary allegations for the enforcement of the contract, the burden was upon the plaintiff to prove its bill in all of its material parts when denied by the defendant, and the defendant in its answer denied enough of the material allegations of the bill to call upon the plaintiff for the proof thereof before it could have a favorable decree; and the bill being without proof to support it, the court committed no error in dismissing it.

As to the cancellation of the contract, it has been noted in another connection that the plaintiff filed a general replica-

tion to the defendant's answer, and it claims that this put the defendant upon proof thereof, and that there was no necessity that it should file a special reply in writing under section 35, chapter 125, of the Code, because the plaintiff's claim for affirmative relief was based altogether on its denial of the statements which were specifically made in the bill. As to whether or not the defendant set up such new matter in its answer as would entitle it to have the contract canceled, it is not material to decide, because if such new matter would authorize the cancellation of the contract, still, under the decisions of this State, the facts set forth in its answer are not such as call for a special reply in writing, and, not being such, when the general replication was filed, the defendant was called upon for proof of such allegations, and no proof being offered, the court could not grant the affirmative relief prayed for. It has been held by this Court that while as a general rule in chancery practice an answer to a bill can only pray for a dismissal of the bill, and not for affirmative relief, on new matter presented by it, that being a proper subject for a cross bill, yet, under our practice, there are certain exceptions to this rule, outside of answers under section 35, chapter 125, Code, and in such cases no special reply to such ordinary answer is necessary, and its matter is not taken for true under general replication; and that in such cases relief may be given the defendant on such ordinary answer against the plaintiff. It seems that the proper deduction from the cases is that if the defense is such as could, under the practice before the statute, have been made by answer, no reply, under the statute, is necessary to an answer containing such matter.

The matter set up in the defendant's answer is certainly such as could have been made in defense to the plaintiff's bill before such statute; and, therefore, if it is such as would authorize the cancellation of the contract, still it could have been set up in the answer in defense to the plaintiff's bill. Before the passage of section 5, chapter 125, Code, in a suit brought for the specific performance of a contract, there is no reason why an answer could not have been filed setting up the failure and inability on the part of the plaintiff to execute its contract, and asking for a rescission and cancellation thereof; and, when this is done, it needs no special reply, but

the general replication puts the defendant upon proof of the allegations. The case of *Goff* v. *Price*, 42 W. Va. 384, was a suit brought for the sale of real estate to enforce the payment of the purchase money thereon, in which an answer was filed alleging that the title was not good, and asking for a rescission of the deed and a cancellation of the notes, and the Court, in this case, held that it was a mere matter of defense, available by ordinary answer before this statute, even though such answer called for a rescission of the contract or deed, and, therefore, needed no special reply, and cited the cases of *Cunningham* v. *Hedrick*, 23 W. Va. 579, and *Fouty* v. *Poar*, 35 W. Va. 70, from which it may be seen that while such defense may be the subject of a cross bill, yet it could, before the statute, have been made by answer, and that where such defense could be made by answer before the statute, no reply, under the statute, is necessary to an answer containing such matter.

The defendant's answer not calling for a special reply, then the rule to be applied is, that where a cause is set down for hearing, on bill, answer and replication, without proof, the answer will be taken for true only so far as it is responsive to the allegations of the bill. If it sets up new matters by way of defense or avoidance of the plaintiff's demand, such matters must be proved, or they will not be considered.

The circuit court committed no error in dismissing the plaintiff's bill, but should have left the parties to their remedy at law, and should not have cancelled the contract. Therefore, the final decree herein is modified so as to dismiss the plaintiff's bill, without prejudice as to any remedies which the parties may have at law, and refusing to cancel the contract; and, as so modified, is affirmed.

*Modified.*