NELL B. McCOY *et al. v.* WEST VIRGINIA LIGHT, HEAT & POWER COMPANY *et al.*

(No. 8410)

Submitted September 22, 1936. Decided December 1, 1936.

*Kimball & Sugden* and *Wm. J. Brennan,* for appellant.
*A. S. Dayton,* for appellees.

MAXWELL, JUDGE:

This is a suit for specific performance of contract with respect to $50,000.00 of first mortgage bonds of the defendant, West Virginia Light, Heat & Power Company, a corporation. The plaintiffs, Nell B. McCoy and Ralph A. Broadwater, are assignees of Sistersville Electric Light & Power Company, a corporation. From a decree requiring the named defendant to deliver bonds in the stated amount to the plaintiffs, the said defendant appeals. Other defendants were not served with process,

so, for convenience, the West Virginia Light, Heat & Power Company will be referred to as the defendant.

In 1919 the Sistersville Company made sale to the defendant of the former's properties which consisted of a plant for the generation of electricity and an electric distribution system, all in Wetzel and Tyler Counties. The consideration for the transfer was $40,100.00 cash, together with $365,000.00 of first mortgage bonds of the purchaser, and $499,500.00 par value of the purchaser's common stock.

This suit came into being by reason of the following paragraphs of the contract:

"It is further understood and agreed that should the counsel of the Purchaser decide that the Vendor has not, in his judgment, legal, valid and binding franchises to construct, operate and maintain poles and wires for the distribution and sale of electricity for light, heat and power in the City of Sistersville, in Tyler County, West Virginia, and in the Town of Paden City, in the Counties of Wetzel and Tyler, West Virginia, or that the Vendor has no franchise rights in his judgment, in said City and Town, the Vendor covenants, agrees, binds and obligates itself to as soon as practicable, secure, in the name of the Purchaser, valid, legal and binding franchises of the character just described, and free from any unreasonable or burdensome restrictions, from said City and Town for the Vendor, which shall be for a term of not less than twenty (20) years unless otherwise agreed to by the Purchaser, and which shall be for such longer term than twenty (20) years as it is possible for the Vendor to secure.

"The Vendor also covenants and agrees to secure an extension of the franchise of the Vendor in the Town Brooklyn originally granted November 15th, 1909, to the New Martinsville Electric Light, Heat & Power Company, for a period of ten (10) years, and the time of which was by an ordinance of said Town, passed January 8, 1915, extended five years, said proposed new extension to be for a period of not less than six (6) years and for as much longer time as it is possible to secure.

The Vendor further covenants and agrees to secure the repeal of that part of 'Section 6' of the franchise granted by the Town of New Martinsville on September 3, 1901, to the Mountain State Electrical Company, and now owned by the Vendor, reading as follows:

" 'The Town of New Martinsville, Wetzel County, West Virginia, having the right to purchase from the Mountain State Electrical Company, its successors or assigns, at any time after the term of ten (10) years from the granting of said ordinance all property such as grounds, buildings, machinery, poles, lines, lamps, and other apparatus used in the manufacture and delivery of electrical currents for lights heat or power. The value of such property to be determined by three (3) appraisers, one to be appointed by the Town Council, one by the Mountain State Electrical Company, its successors or assigns, and the third by the two apppraisers first appointed.'

"Both the extension and repeal aforesaid to be secured as soon possible.

"Should the Vendor be unable to secure such franchises, extension and repeal as heretofore recited, on or before the date fixed for the closing hereunder, it is understood and agreed that the Purchaser will withhold fifty thousand dollars ($50,000) in principal amount of its First Mortgage Six Per Cent. Ten Year Sinking Fund Gold Bonds out of the total amount of three hundred sixty-five thousand dollars ($365,000) of said bonds to be delivered to the Vendor as hereinafter provided until such things are secured (except as hereinafter otherwise provided), said bonds shall, however, be deposited with the Trustee under the first mortgage of the Purchaser given to secure said bonds, but on the distinct understanding that none of said bonds shall be delivered to the Vendor (except as hereinafter provided) until valid, legal and binding franchises, free from any unreasonable and burdensome restrictions, have been secured for the Purchaser in the said City of Sistersville, and the said Town of Paden City, nor until said extension and repeal as heretofore recited have been secured as

aforesaid. Said bonds shall, however, be delivered by the Trustee to the Vendor upon compliance with all of the conditions just recited.

"It is further understood and agreed that should the Purchaser incur any loss or losses due to the failure on the part of the Vendor to deliver legal, valid and binding franchises of the character above described, to the Purchaser in said City and Town, or to secure the extension and repeal as heretofore recited, at the time of the closing provided to be had hereunder, that the Purchaser may at any time thereafter sell any part or all of said bonds at the best price which the said Purchaser can secure for said bonds, and reimburse itself for any such loss or losses from the proceeds derived therefrom. And reasonable evidence given by the Purchaser to the said Trustee to the effect that it has suffered any such loss or losses, shall alone be sufficient for, and full protection to the Trustee for the delivery to the Purchaser of a sufficient number and amount of bonds which upon sale thereof at a price which shall be stated by the Purchaser to the Trustee (but which shall be not less than eighty per cent (80%) of the par value of said bonds, and accrued interest), will produce the amount of proceeds necessary to reimburse the Purchaser in full for any loss or losses that may from time to time be suffered by the Purchaser, as aforesaid. It is understood and agreed, however, that before making any sale of said bonds as hereinabove described, the Purchaser shall give the Vendor written notice of any loss or losses that it may suffer on account of the failure of the Vendor to deliver legal, valid and binding franchises of the character above described in said City and said Town, or on account of the failure of the Vendor to secure the extension and repeal aforesaid, and that the Vendor may pay, if it so elects, the amount or amounts, in cash, of any such loss or losses that the Purchaser may suffer, provided that same is paid within thirty (30) days after the mailing of said notice, in which event the Purchaser agrees not to sell any of said bonds. And in the event that the Vendor shall make any such payment it is

further understood and agreed that the Vendor shall at once be and become entitled to receive bonds in thousand dollar ($1,000) denominations, for every thousand dollars ($1,000) or multiple thereof so advanced, to reimburse the Vendor for said payment or payments, except that when less than one thousand dollars ($1,000) or some multiple thereof, in money shall be paid the Purchaser by the Vendor as above provided, the Vendor shall receive no bonds by way of reimbursement for such portion of such payment as may represent any fractional part of one thousand dollars ($1,000) unless in such case the Vendor shall pay to the Purchaser (in addition to such loss) a sum which when added to the amount of such loss should equal the full value of such bonds; and upon so making such additional payment then the Vendor shall be entitled to, and shall receive such bond by way of reimbursement by way of such payment; or, if the Vendor so elects, the amount of the payment representing the fractional part of one thousand dollars ($1,000) shall stand as a credit, to be added to the amount of any future payment which may be made by the Vendor, on such account.

"Pending final delivery of any part or all of said bonds, it is understood and agreed by and between the parties hereto that the interest as it becomes due on the said bonds shall be paid to the Vendor hereunder provided, however, that on the sale as hereinabove provided, of any part or all of said bonds, payments of interest to Vendor shall cease."

The gravamen of the bill lies in the charge by the plaintiffs, on information and belief, that the trustee in the first mortgage and the defendant did not maintain the escrow of bonds as provided in the contract, but that the trustee certified the escrow bonds and delivered them to the defendant and that the same were sold or otherwise used by the defendant.

It is further alleged by the plaintiffs that counsel for the defendant never notified the Sistersville Company or the plaintiffs that said company at the time it sold the properties did not have proper franchises in the City

of Sistersville and the Town of Paden City, and therefore no obligation arose upon the Sistersville Company or the plaintiffs as successors thereof, to procure franchises as contemplated in the said agreement. Further, it is alleged that after its acquisition of the properties the defendant operated in the City of Sistersville, unmolested, without a franchise until 1930 when it was granted a franchise by the city; that soon after the purchase of the said properties by the defendant, it advised the Sistersville Company that no further franchise in Paden City was necessary, or desired by it, and that all provisions of the agreement as to obtaining a franchise in Paden City were waived. It is also alleged that the defendant, after its purchase, continued to operate in the Town of Brooklyn, undisturbed, without an extension of its franchise, and that the defendant was not damaged by reason of the absence of an extension and has acquiesced in the non-procurement thereof. It is further alleged that neither the Sistersville Company nor the plaintiffs ever undertook to secure a repeal of the recapture clause of the New Martinsville franchise for the reason that it was considered advisable not to attempt to obtain such repeal, and that the defendant acquiesced in that view; that the Town of New Martinsville never asserted its right under the recapture clause. In summation, it is alleged that all the conditions set out in the agreement between the Sistersville Company and the defendant have been substantially complied with and that the plaintiffs are entitled to the delivery to them of the escrow bonds.

Defendant's demurrer to the bill was properly overruled. The main point of demurrer, namely, that the plaintiffs have plain, adequate and complete remedy at law, cannot be sustained, because, if the plaintiffs proceeded otherwise than as they are proceeding herein, there would be no possibility of preserving to them the benefit of the first mortgage lien. If they have right of recovery against the defendant, they should have the security of the said lien, if possible.

The defendant filed an original answer, a first amend-

ed answer, and a second amended answer. The court sustained the plaintiffs' demurrer to each of the answers. When the last demurrer was sustained, the defendant adhered to his pleading (second amended answer) and declined to plead further. Thereupon, the plaintiffs, relying on Code 56-4-65 which provides that when a demurrer to an answer is sustained the court may strike out the answer and render a decree for the plaintiff, moved the court to take that course herein. The court sustained the motion of the plaintiffs and entered decree granting the relief for which they prayed in their bill.

In the second amended answer, the defendant asserts that none of its directors or officers was present at the closing of its agreement with the Sistersville Company in 1919; and that they have no personal knowledge concerning the allegations contained in the bill to the effect that the defendant and the trustee under the mortgage did not maintain the escrow of $50,000.00 bonds, and that the same were delivered by the trustee to the respondent soon after the consummation of the sale of said property. Defendant further avers, on information and belief, that the entire original issue of first mortgage bonds was certified by the trustee and delivered to the defendant, and that the latter, at the time of closing said purchase, deposited $50,000.00 thereof with the trustee according to the provisions of the agreement of purchase, "and the same were not sold or otherwise used by the respondent, nor were they thereafter delivered by the trustee to the respondent at any time, and each and every of the allegations of the bill of complaint to the contrary are hereby denied." There is thus presented both a categorical and a general denial of this vital allegation of the bill. In such situation, the matter should go to proof. *Raleigh County Bank* v. *Ball,* 112 W. Va. 641, 166 S. E. 377.

In addition to the denials mentioned, the defendant expressly denies the several allegations of the bill to the effect that plaintiffs substantially complied with the several conditions of the contract of sale pertaining to fran-

chises in Sistersville, Paden City, Brooklyn, and New Martinsville. The defendant asserts that neither the Sistersville Company nor the plaintiffs made any effort at compliance with the conditions that were imposed by the contract of 1919 in respect of the said several franchises.

Regarding the plaintiffs' prayer for discovery by the defendant with respect to matters set forth in the bill concerning the disposition which was made of the said escrow bonds, the said effort on the part of the plaintiffs is not well taken, in the absence of some responsible officer of the said corporate defendant, as an individual defendant. "A bill cannot be maintained against a corporation for discovery without making a proper officer of it a party." *Munson* v. *German-American Ins. Co.,* 55 W. Va. 423, 47 S. E. 160.

Though the second amended answer does not contain a prayer for affirmative relief (neither did the first two answers), it does present as defensive of the bill, a charge that by reason of the plaintiffs' failure to meet the above stated conditions of the contract of sale, the defendant was damaged at least to the extent of the value of the bonds sought by the plaintiffs. This is in the nature of recoupment, and is within settled equitable principles, both substantive and procedural. "A claim for recoupment in an answer does not make such answer one setting up new matter calling for affirmative relief, and no special reply thereto is necessary, but such claim is only matter of defense to the bill, and is met by a general replication." *Foutty* v. *Poar,* 35 W. Va. 70, 12 S. E. 1096. Consult: *Long* v. *Perine,* 41 W. Va. 314, 319, 23 S. E. 611; *Benson* v. *Snyder,* 42 W. Va. 223, 227, 24 S. E. 880; *Goff* v. *Price,* 42 W. Va. 384, 387, 26 S. E. 287; *Triplett* v. *Lake,* 43 W. Va. 428, 433, 27 S. E. 363; *Fulmer Coal Co.* v. *Railroad Co.,* 57 W. Va. 470, 478, 50 S. E. 606; *Di Bacco* v. *Benedetto,* 82 W. Va. 84, 88, 95 S. E. 601. The defendant's assertion of damages should be considered as defensive of the bill. The claim was properly presented and constitutes an additional substantial reason why the

second amended answer should have been held sufficient on demurrer.

In consideration of the whole matter, we are of opinion that the second amended answer adequately puts in issue the allegations of the bill, and sufficiently pleads the defensive matters relied on by the defendant; therefore, the demurrer to the said answer should have been overruled.

Conforming to the foregoing, we reverse the decree of the trial court and remand the cause for further proceeding not at variance herewith.

*Reversed and remanded.*