474 S.E.2d 458

Kyle WOLFORD, dba Puncheon
Creek Coal, Inc., Plaintiff
Below, Appellant,

v.

LANDMARK AMERICAN INSURANCE
COMPANY, A Corporation; DVUA/WV,
McDonough Caperton Insurance Group,
A Corporation, Defendants Below, Appellees.

No. 22947.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 10, 1996.

Decided May 17, 1996.

E. Joseph Buffa, Jr., Charleston, for Appellant.

Kevin A. Nelson, Patricia J. Loehr, Kay, Casto, Chaney, Love & Wise, Charleston, for Appellees Landmark American Insurance Company and DVUA.

James H. Henderson, II, Abrams, Byron, Henderson & Richmond, Beckley, for Appellee McDonough Caperton Insurance Group.

PER CURIAM:

This action is before this Court upon an appeal from the final orders of the Circuit Court of Raleigh County, West Virginia, entered for various insurance companies with respect to the $360,750 insurance claim of the appellant, Kyle Wolford. The claim concerns the theft of mining equipment. Specifically, on August 11, 1994, the circuit court granted the motion of the Landmark American Insurance Company and DVUA/WV, Inc., for summary judgment. On September 22, 1994, the circuit court granted the motion of the McDonough Caperton Insurance Group for summary judgment. Thereafter, on October 25, 1994, the circuit court denied the appellant's motion under *W. Va. R. Civ. P.* 60(b) for relief concerning Landmark.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. Inasmuch as the summary judgments for DVUA/WV, Inc., and the McDonough Caperton Insurance Group were not contested below, those judgments are affirmed. For the reasons stated below, however, this Court is of the opinion that the denial of the appellant's Rule 60(b) motion concerning Landmark constituted an abuse of discretion. We, therefore, reverse the order of October 25, 1994, and remand this action to the circuit court for further proceedings.

I

The appellant was the owner of a mining operation located in Prestonsburg, Floyd County, Kentucky, known as Puncheon Creek Coal, Inc. In June 1992, the appellant underwent heart surgery and was unable to continue the business. At that time, the Pikeville National Bank of Kentucky and an individual by the name of Ron Newberry held liens, totaling in excess of $50,000, upon various items of the appellant's mining equipment. The appellant decided to liquidate the business and enlisted the aid of his brother, Warren Elswick.

In August 1992, Warren Elswick entered into a written contract with an individual by the name of George McGraw concerning the sale of the equipment. Although it has been asserted that the contract was lost or stolen, the record is clear that McGraw, and two others, Mike Milam and Bo Cook, were to (1) remove the mining equipment from the Floyd County, Kentucky, site; (2) transport the equipment to McGraw's Stover, West Virginia, farm; (3) clean, paint and safeguard the equipment at that location; and (4) sell the equipment upon the appellant's behalf.

McGraw, Milam and Cook were to be compensated for their efforts from the proceeds of sale. They, in turn, agreed to pay Warren Elswick a "finder's fee" of several thousand dollars for the contract.

Importantly, the record contains a number of statements by Elswick found in an interview conducted by an insurance claims adjuster on November 10, 1992, and in depositions dated February 23, 1993, and April 25, 1994, to the effect that, as a requirement of good faith, McGraw, Milam and Cook were to pay off the liens of the Pikeville National Bank and Ron Newberry before removing the mining equipment from the Floyd County, Kentucky, site. As the petition for appeal asserts: "These individuals were to first pay off the liens to Pikeville National Bank and Ron Newberry and then move the equipment off the mining site." In fact, in its August 11, 1994, ruling granting the motion of Landmark and DVUA/WV, Inc., for summary judgment, the circuit court recognized Elswick's assertion that the first duty of McGraw, Milam and Cook under the contract was to "pay off the liens."

Subsequent to the making of the contract with McGraw, Milam and Cook, Warren Elswick, in September 1992, obtained an insurance policy upon the appellant's behalf from the Landmark American Insurance Company covering the mining equipment. Elswick obtained the policy through DVUA/WV, Inc., and McDonough Caperton as procurement agents for Landmark. Neither DVUA/WV, Inc., nor McDonough Caperton agreed to insure the mining equipment, and, as indicated above, the summary judgments for those companies were not contested below.

The policy issued by Landmark upon the mining equipment was effective from September 2, 1992, until September 2, 1993, and contained the following exclusion:

We will not pay for accidental loss or damage caused by or resulting from any of the following: ... Dishonest acts by you, anyone else with an interest in the Covered Property, or your or their employees or authorized representatives or anyone entrusted with the Covered Property, whether or not acting alone or in collusion with other persons or occurring during hours of employment [.]

The policy issued by Landmark further provided that coverage was void in any case of fraud, intentional concealment or misrepresentation concerning the property. Finally, the policy contained the following provision, relevant to this action:

If we and you disagree on the value of the property or the amount of 'loss,' either may make written demand for an appraisal of the 'loss.' In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of 'loss.' If they fail to agree, they will submit their difference to the umpire. A decision agreed to by any two will be binding.

As the parties have stipulated, the mining equipment was stolen in September 1992, while the equipment was insured by Landmark. The liens held by the Pikeville National Bank and Ron Newberry were never paid off by McGraw, Milam and Cook, and the equipment was never recovered. McGraw, Milam and Cook were subsequently indicted for the theft by a Floyd County, Kentucky, grand jury. The theft was reported to the insurance companies in November 1992.

On November 12, 1992, the Pikeville National Bank sold at auction six remaining pieces of mining equipment belonging to the appellant. The proceeds of sale, in excess of $23,000, were applied to the lien held by the Pikeville National Bank. According to statements by Elswick found in the interview of November 10, 1992, and in the depositions of February 23, 1993, and April 25, 1994, the six pieces of equipment were stripped by the thieves prior to the repossession and sale by the Pikeville National Bank.

By letter dated April 21, 1993, Landmark informed the appellant that an insurance claim or "proof of loss" concerning the theft had never been filed. The letter referred to the six pieces of mining equipment sold by the Pikeville National Bank and stated that

"it is not clear what equipment was stolen and what sums are being claimed[.]" In response, the appellant filed a $360,750 claim upon the Landmark policy. Included in the inventory of twenty-five pieces of equipment making up the claim were the six pieces of equipment sold by the bank. The cover letter filed with the appellant's proof of loss stated: "Enclosed is the proof of loss you requested, the inventory list with receipts and pictures of the equipment that was stripped before it was auctioned off."

Landmark subsequently selected and employed an appraiser who placed an approximate value of $70,000 upon all of the appellant's mining equipment. After various deductions therefrom, Landmark offered the appellant $35,500 to settle the claim. An appraisal submitted by the appellant, however, from Appalachian Appraisals of Beckley, West Virginia, valued the mining equipment at approximately $267,000.

In July 1993, the appellant instituted an action in the circuit court against Landmark, DVUA/WV, Inc., and McDonough Caperton for recovery upon the Landmark insurance policy. As indicated above, summary judgments were entered for each of those companies. On October 25, 1994, the circuit court denied the appellant's motion under Rule 60(b) for relief concerning Landmark.

## II

As discussed above, the insurance policy was obtained upon the appellant's behalf through DVUA/WV, Inc., and McDonough Caperton as procurement agents for Landmark. Neither DVUA/WV, Inc., nor McDonough Caperton agreed to insure the appellant's mining equipment, and the summary judgments for those companies were not contested below. In this appeal, the appellant, asserting no grounds for relief as to DVUA/WV, Inc., contends that McDonough Caperton, as agent for Landmark, misled him by overstating the extent of the insurance coverage provided by Landmark in the policy upon the mining equipment. That contention, however, was not raised below in response to the motion for summary judgment and is argued before this Court for the first time. In fact, during a hearing upon the motion

conducted in August 1994, counsel for the appellant, in response to a direct inquiry by the circuit court, stated that the appellant did not resist the entry of summary judgment for McDonough Caperton.

 It should be noted that *W.Va. R. Civ. P.* 56(e) provides that a response to a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." As this Court recently stated in *Gentry v. Mangum,* 195 W.Va. 512, 519, 466 S.E.2d 171, 178 (1995), the nonmovant, in the face of a showing of entitlement to summary judgment, must point to "specific facts demonstrating that there is, indeed, a trialworthy issue." Here, the appellant did not resist the motion of McDonough Caperton for summary judgment and now asks this Court to reverse that judgment upon a contention advanced upon appeal for the first time. However, inasmuch as that contention, concerning the overstating of insurance coverage, was never brought to the attention of the circuit court, it is not properly before this Court. In syllabus point 3 of *Dean v. Department of Motor Vehicles,* 195 W.Va. 70, 464 S.E.2d 589 (1995), this Court held: " 'This Court will not consider questions, nonjurisdictional in their nature, which have not been acted upon by the trial court.' " Syl. pt. 4, *Wheeling Downs Racing Association v. West Virginia Sportservice, Inc.,* 157 W.Va. 93, 199 S.E.2d 308 (1973). *See* syl. pt. 4, *G Corp, Inc. v. MackJo, Inc.,* 195 W.Va. 752, 466 S.E.2d 820 (1995); syl. pt. 7, *State v. Garrett,* 195 W.Va. 630, 466 S.E.2d 481 (1995); syl. pt. 4, *State ex rel. State Line Sparkler v. Teach,* 187 W.Va. 271, 418 S.E.2d 585 (1992); syl. pt. 8, *Charlton v. Charlton,* 186 W.Va. 670, 413 S.E.2d 911 (1991); syl. pt. 1, *Buffalo Mining Company v. Martin,* 165 W.Va. 10, 267 S.E.2d 721 (1980); syl. pt. 2, *Sands v. Security Trust Company,* 143 W.Va. 522, 102 S.E.2d 733 (1958). *See also,* 1B M.J., *Appeal and Error,* § 103 (1995), indicating that a matter "not in dispute" before the trial court will not be considered for the first time on appeal; 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers,* § 1–7(B)(6)(b) (3rd ed. 1994), stating that "questions not raised in a trial court are

generally not reviewable on appeal." As we recently observed in syllabus point 2 of *State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 470 S.E.2d 162 (1996): "To preserve an issue for appellate review, a party must articulate it with sufficient distinctiveness to alert a circuit court to the nature of the claimed defect."

Upon all of the above, therefore, the summary judgments entered by the circuit court for DVUA/WV, Inc., and for McDonough Caperton are affirmed.

### III

The principal controversy before us, however, concerns the entry of summary judgment for Landmark and the subsequent denial on October 25, 1994, of the appellant's motion under *W. Va. R. Civ. P.* 60(b) for relief from that judgment. As discussed herein, the circuit court entered summary judgment for Landmark upon the basis of the insurance policy provisions, set forth above, regarding (1) dishonest acts, (2) misrepresentation and (3) the appraisal process. The appellant alleges upon appeal, as he did in the Rule 60(b) motion below, that the record contains genuine issues of fact as to each of those provisions and that, accordingly, summary judgment should not have been entered.

■ Under Rule 60(b), a court may relieve a party or his legal representative from a final judgment for a number of grounds including mistake, the judgment is void or any other reason justifying relief from the operation of the judgment. In syllabus point 5 of *Toler v. Shelton,* 157 W.Va. 778, 204 S.E.2d 85 (1974), this Court stated: "A motion to vacate a judgment made pursuant to *Rule* 60(b), W.Va. R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." That principle has been cited often by this Court and recently in syllabus point 1 of *Nancy Darlene M. v. James Lee M.,* 195 W.Va. 153, 464 S.E.2d 795 (1995). *See also* syl. pt. 1, *Jackson General Hospital v. Davis,* 195 W.Va. 74, 464 S.E.2d 593 (1995); syl. pt. 1, *Blair v. Ford Motor Credit Company,* 193 W.Va. 250, 455 S.E.2d

809 (1995). Similarly, this Court observed in *Intercity Realty Company v. Gibson,* 154 W.Va. 369, 377, 175 S.E.2d 452, 457 (1970), that "it has been widely held that a motion to vacate a judgment under Rule 60(b) is addressed to the sound discretion of the court and that an abuse of such discretion must be shown before denial of the motion will be overturned on appeal." As stated in Lugar & Silverstein, *West Virginia Rules of Civil Procedure* (Michie 1960), at 466: "The granting of motions under Rule 60(b) rests within the sound discretion of the trial court and may be upon such terms as the court finds just."

■ The dishonest acts exclusion, set forth above, provided that Landmark would not be liable for loss or damage under the policy if caused by dishonest acts committed by the appellant "or anyone entrusted with the Covered Property, whether or not acting alone or in collusion with other persons [.]" According to Landmark, that exclusion applied because McGraw, Milam and Cook were entrusted with the appellant's mining equipment, and, as the parties have stated for purposes of this action, McGraw, Milam and Cook stole the equipment. The circuit court agreed with Landmark and held that the dishonest acts exclusion of the policy applied.

In *Metropolitan Property and Liability Insurance Company v. Acord,* 195 W.Va. 444, 451, 465 S.E.2d 901, 908 (1995), a case involving automobile insurance, this Court stated: "The definition of 'entrust' connotes that a person with possession and authority over an item relinquishes that possession and authority to another." Citing *Webster's Third New International Dictionary,* we also noted that "entrust" means "to commit or surrender to another with a certain confidence regarding his care, use, or disposal of." 195 W.Va. at 451, 465 S.E.2d at 908. *See also* 14A *Words and Phrases,* "Entrust" (West Pub.—Cum.Supp.1995).

Here, the Pikeville National Bank and Ron Newberry held liens, totaling in excess of $50,000, upon various items of the appellant's mining equipment, and the record is undisputed that those liens were never paid off by McGraw, Milam and Cook. In fact, the bank

conducted an auction of some of the equipment, allegedly stripped by McGraw, Milam and Cook, in order to satisfy its lien. The appellant contends that McGraw, Milam and Cook had agreed to pay off the liens as a condition to the entrustment of the property to them by the appellant. Inasmuch as they failed to perform the condition, the appellant asserts, they were never entrusted with the mining equipment, and the dishonest acts exclusion of the insurance policy did not apply.

■ As stated above, the record contains a number of statements by Warren Elswick found in an interview conducted by an insurance claims adjuster on November 10, 1992, and in depositions dated February 23, 1993, and April 25, 1994, to the effect that, as a requirement of good faith, McGraw, Milam and Cook were to pay off the liens of the Pikeville National Bank and Ron Newberry before removing the mining equipment from the Floyd County, Kentucky, site. For example, on February 23, 1993, Elswick stated that "the first thing they was supposed to have done, they was supposed to went to Kentucky and paid off the equipment. My brother had a mortgage on the equipment." Although ruling in favor of Landmark, the circuit court recognized Elswick's assertion that the first duty of McGraw, Milam and Cook was to "pay off the liens." In any event, this Court is of the opinion that the appellant is correct in his assertion that a genuine issue of fact existed as to whether the mining equipment had been "entrusted" to McGraw, Milam and Cook prior to the theft, within the meaning of the dishonest acts exclusion of the policy. *See Metropolitan Property, supra.* As the petition for appeal states: "Clearly there is an issue of fact raised whether the mining equipment was ever 'given over' to the thieves." The circuit court, therefore, should have reconsidered, under Rule 60(b), its entry of summary judgment for Landmark upon the dishonest acts issue.*

■ Similarly, the appellant is correct in his assertion that a genuine issue of fact existed with regard to the filing of his claim or "proof of loss" with Landmark for $360,-750. The insurance policy provided that coverage was void in any case of fraud, intentional concealment or misrepresentation concerning the property. According to Landmark, the appellant misrepresented his loss by attaching an inventory of equipment to the claim or "proof of loss" which the appellant knew included the six pieces of equipment previously repossessed and auctioned off by the Pikeville National Bank. The circuit court agreed with Landmark and entered summary judgment.

The appellant's claim or "proof of loss," however, was filed in April 1993 in response

---

* It should be noted that the insurance policy issued by Landmark also contained a provision stating that the dishonest acts exclusion did not apply to a "carrier for hire." The circuit court in its ruling of August 11, 1994, held that the "carrier for hire" exemption from the dishonest acts exclusion of the policy did not apply. Specifically, the circuit court noted that "the contract [with McGraw, Milam and Cook], as described by Elswick, was not for carriage, but it was for sale of property by an agent."

We agree. The record is undisputed that the purpose of the contract with McGraw, Milam and Cook was the sale of the mining equipment, rather than the transportation of the equipment. The property was to be taken from Kentucky to Stover, West Virginia, only because McGraw owned a farm there, and the equipment could be temporarily kept at that location. The duties of McGraw, Milam and Cook under the contract included cleaning, painting and safeguarding the equipment and selling the equipment upon the appellant's behalf. As the appellant contends, McGraw, Milam and Cook were also required to first pay off the liens held by the Pikeville National Bank and Ron Newberry. The brief of Landmark observes that, if the contract "could have been accomplished in Kentucky, it would have been, without any need for transportation."

Moreover, McGraw, Milam and Cook were not in the business of transporting property, and did not hold themselves out to the public as engaging in such a business. In fact, the record contains evidence to the effect that McGraw, Milam and Cook initially were interested in buying the mining equipment from the appellant but, instead, chose to sell the equipment upon the appellant's behalf. McGraw, Milam and Cook were to be compensated from the proceeds of sale, rather than for transporting the equipment. Thus, the question of "entrustment" is the primary issue with regard to the dishonest acts exclusion of the insurance policy. McGraw, Milam and Cook were not "carriers for hire." *See W.Va. Code,* 24A-1-2 [1991]; *Gambino v. Jackson,* 150 W.Va. 305, 145 S.E.2d 124 (1965); *Black's Law Dictionary,* "Carrier" p. 214 (6th ed. 1990).

to a letter from Landmark dated April 21, 1993. In that letter, Landmark referred to the auction of the six pieces of equipment by the bank and stated that "it is not clear what equipment was stolen and what sums are being claimed." In reply, the appellant's cover letter filed with the claim or "proof of loss" indicated that some of the equipment was "stripped before it was auctioned off." In addition, Warren Elswick, as early as in November 1992, indicated to the insurance claims adjuster that some of the property had been stripped. Clearly, then, in view of the factual dispute surrounding the insurance policy's exclusion for fraud, intentional concealment or misrepresentation, the circuit court should have reconsidered its entry of summary judgment on that point.

■ Finally, the circuit court adopted the position of Landmark that summary judgment was justified because the appellant frustrated the appraisal process outlined in the insurance policy. In particular, unable to agree upon the amount of the loss, Landmark and the appellant each employed an appraiser, and each appraiser submitted an appraisal report. As set forth above, the relevant provision of the insurance policy provided: "The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction." Landmark asserts that, rather than participating in the process concerning the selection of an umpire, the appellant engaged in a series of correspondence in which he merely attacked the credibility of Landmark's appraiser.

It is clear that both Landmark and the appellant obtained appraisals of the loss of the mining equipment, that the appraisal reports were in disagreement and that neither side requested that a judge select an umpire to resolve the conflict. As the petition for appeal states, the appellant selected an appraiser, submitted his appraisal to Landmark and had that appraisal rejected by Landmark. While the appellant may have frustrated the selection of an umpire by the parties' appraisers, either side, as the clear import of the insurance policy suggests, could have requested that a judge make the selection. In any event, the appellant has

shown "specific facts demonstrating that there is, indeed, a trialworthy issue" concerning compliance with the appraisal process outlined in the insurance policy. *See Gentry, supra.* As with the other policy provisions discussed above, therefore, the circuit court should have reconsidered, under Rule 60(b), its entry of summary judgment as to the appraisal process.

In *Gaines v. Drainer,* 169 W.Va. 547, 289 S.E.2d 184 (1982), the Circuit Court of Taylor County denied a Rule 60(b) motion filed by a plaintiff in a personal injury action following the granting of summary judgment for the defendants. This Court reversed in *Gaines,* however, holding that, in view of a change in the law concerning contributory and comparative negligence, the denial of the Rule 60(b) motion constituted an abuse of discretion. Moreover, in *Pauley v. Pauley,* 164 W.Va. 349, 263 S.E.2d 897 (1980), a denial of a Rule 60(b) motion was reversed by this Court, in a proceeding concerning the modification of a divorce decree, where the record below contained unresolved, material issues of fact. *Cf,* syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), stating that "[a] circuit court's entry of summary judgment is reviewed *de novo.*"

Accordingly, for the reasons stated above, the summary judgments entered for DVUA/WV, Inc., and the McDonough Caperton Insurance Group are affirmed. However, the denial of the appellant's Rule 60(b) motion concerning the Landmark American Insurance Company constituted an abuse of discretion, and the order of October 25, 1994, is reversed. This action is, therefore, remanded to the Circuit Court of Raleigh County for further proceedings.

Affirmed, in part; Reversed, in part, and remanded.