523 S.E.2d 282

**STATE of West Virginia ex rel. CONSOLIDATION COAL COMPANY, Petitioner,**

v.

**Honorable Russell M. CLAWGES, Jr., Judge of the Circuit Court of Monongalia County, and Boston Old Colony Insurance Company, a Corporation, Respondents.**

**No. 25976.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 5, 1999.

Decided Nov. 5, 1999.

---

Robert M. Steptoe, Jr., Larry J. Rector, Steptoe & Johnson, Clarksburg, West Virginia, Robert M. Vukas, Senior Counsel, Consol, Inc., Pittsburgh, Pennsylvania, Counsel for the Petitioner Consolidation Coal Company.

D.C. Offutt, Jr., Scott W. Andrews, Offutt, Fisher & Nord, Huntington, West Virginia, Allan N. Karlin, Allan N. Karlin & Associates, Morgantown, West Virginia, Counsel for Respondent Boston Old Colony Insurance Company.

PER CURIAM:

This case is before the Court upon a petition for a writ of mandamus and/or prohibition filed by the Petitioner, Consolidated Coal Company (sometimes referred to as

"CCC"), against the Respondents, The Honorable Russell M. Clawges, Jr., Judge of the Seventeenth Judicial Circuit and Boston Old Colony Insurance Company ("BOC"). The petition seeks to compel the Respondent judge to reinstate an order dated November 4, 1998,[1] which awards the Petitioner $1,000,-000 together with pre-judgment interest and attorneys' fees. In the alternative, the Petitioner seeks a writ of prohibition to prohibit the circuit court from enforcing orders entered April 1, 1999, and April 8, 1999, which set aside the previously-entered judgment order dated November 4, 1998. The Petitioner argues that: 1) the issuance of mandamus and/or prohibition is an appropriate; 2) the November 4, 1998, order was a final judgment order entered pursuant to the mandate of this Court in *Consolidation Coal Company v. Boston Old Colony Insurance Co.*, 203 W.Va. 385, 508 S.E.2d 102 (1998), and therefore, Rule 54(b) of the West Virginia Rules of Civil Procedure is not applicable; 3) the circuit court should be prohibited from permitting the Respondent BOC to relitigate the Petitioner's entitlement to the additional $1,000,000 in coverage, an issue already decided by this Court in *Consolidation Coal;* 4) the Respondent judge exceeded his jurisdiction by setting aside a judgment where no timely motion was filed pursuant to West Virginia Rule of Civil Procedure 59, no grounds existed to set aside the judgment pursuant to West Virginia Rule of Civil Procedure 60(b) and the four-month appeal period had expired prior to the entry of the Respondent judge's April 1, 1999, and April 8, 1999, orders; and 5) the circuit court lacked jurisdiction to decide Respondent BOC's motion for reconsideration because the four-month appeal period had already expired. Based upon a review of the record, the parties' respective briefs and arguments, as well as all other matters submitted before this Court, we decline to issue a writ of prohibition and/or mandamus.

1. The lower court entered a revised order on November 13, 1998, nunc pro tunc as of November 4, 1998. For purposes of clarity in the opinion and because the only change in the November 4, 1998, order concerned the calculation of prejudgment interest, we refer to the November 4, 1998, order and the November 13, 1998, order collectively as the November 4, 1998, order.

## I. FACTS

In 1991 and 1992, CCC and M.A. Heston, Inc. ("Heston") entered into "Blanket Contracts" which established the terms and conditions for work that Heston was to perform as an independent contractor for CCC in the respective years. Additionally, CCC and Heston entered into "Purchase Order Contracts" which provided that all work performed under the purchase order was governed by and performed in accordance with the Blanket Contract. *Consolidation Coal,* 203 W.Va. at 387–88, 508 S.E.2d at 104–05. BOC insured the contracts under the terms of an insurance policy which insured Heston on the job sites. *Id.* at 388, 508 S.E.2d at 105. Heston, in turn, subcontracted with Omni Drilling, Inc. ("Omni"). Therefore, Omni was added as an additional insured to the BOC policy. *Id.*

On March 19, 1992, Heston and Omni were installing a de-watering pipe at one of CCC's mines when an explosion occurred. As a result of the explosion, four people were killed, five people were injured and a leased crane was damaged. *Id.* A number of tort claims ensued against CCC, Heston and Omni. Those underlying claims were ultimately settled. *Id.*

After the settlement of the underlying claims, CCC, Heston, Omni and BOC proceeded to litigate the declaratory judgment action which CCC had filed. Omni and Heston filed a motion in limine seeking to limit the declaratory judgment issues to a determination of the parties' rights under the BOC insurance policy. The lower court also considered a motion for partial summary judgment filed by BOC on behalf of Omni and Heston, seeking to preclude CCC's claims for contribution and indemnity on the basis that the parties had previously reached a settlement agreement.[2] *See id.* In re-

2. BOC asserted below that "in exchange for its contribution of $1,000,000 toward the settlements in the ten underlying lawsuits resulting from the ... explosion, CCC agreed to drop its claims for contribution and indemnification." *Consolidation Coal*, 203 W.Va. at 388, 508 S.E.2d at 105.

sponse to the motions filed, the circuit court ruled that

> the declaratory judgment action was filed for the purpose of determining the rights and obligations of the parties under the insurance policy only. Alternatively, the circuit court found that the parties had negotiated in good faith and reached an agreement whereby BOC contributed $1,000,000 toward the settlement of the underlying lawsuits and CCC agreed to forego its claims for contribution and indemnity.

*Id.* at 388–89, 508 S.E.2d at 105–06. Subsequently, the circuit court also ruled on cross-motions for summary judgment submitted by the parties, that there was a maximum limit of $1,000,000 of coverage under the BOC policy for any one occurrence regardless of the number of insureds. *Id.* at 389, 508 S.E.2d at 106.

An appeal to this Court ensued. According to our decision in *Consolidation Coal,* CCC argued that the lower court erred: 1) in granting summary judgment in favor of Heston and Omni with respect to CCC's claims for indemnification and contribution; 2) in granting summary judgment in favor of BOC on the issue of the amount of insurance coverage owed to CCC under the applicable insurance policy; and 3) in failing to grant CCC's motion to amend the complaint.[3] *Id.* at 389, 391 and 393, 508 S.E.2d at 106, 108 and 110.

On July 17, 1998, this Court issued its written decision in *Consolidation Coal.* In addressing the above-mentioned assignments of error raised by CCC, we concluded that the circuit court had erred in granting summary judgment in favor of Omni and Heston, because "[u]pon review of the record, we find that disputed issues of material fact exist as to whether a settlement was, in fact, reached by the parties." *Id.* at 390, 508 S.E.2d at 107. Further, with regard to the amount of insurance coverage available to CCC under the BOC policy, we concluded that "the circuit court erred by finding that the insurance policy provided only $1,000,000 in coverage,

instead of $2,000,000 in coverage." *Id.* at 393, 508 S.E.2d at 110. This Court then remanded the case to the circuit court "for further action consistent with this opinion." *Id.* This Court unanimously rejected a petition for rehearing and entered its mandate on September 17, 1998.

On remand, the Petitioner tendered a proposed judgment order to the circuit court on August 12,1998, seeking entry of judgment for the additional $1,000,000[4] in insurance coverage, as well as for prejudgment interest and attorneys' fees. The Respondent BOC represents that it objected to the entry of the judgment order at a status conference which occurred on October 13, 1998.

Subsequent to the October 13, 1998, status conference, the circuit court issued an opinion letter, dated October 15, 1998. In the opinion letter, the circuit court stated:

> I have concluded that the insurance coverage issue and the indemnity/contribution issues in this cases are in fact separate issues for resolution. Furthermore, the insurance coverage issue was finally resolved by the West Virginia Supreme Court of Appeals in its opinion which determined that the Consol contract was an 'insured contract' thus, placing Consol on equal footing with Heston and Omni for coverage purposes. In addition, the Supreme Court determined that the coverage available was Two Million Dollars ($2,000,000.00). Since Consol has paid out an excess of Five Million Dollars ($5,000,000.00) to settle the claims arising out of the accidents which give rise to this suit, Consol is entitled to the entire Two Million Dollars ($2,000,000.00) in insurance coverage. Accordingly, it is my intention to enter the Order submitted by Mr. Rector unless counsel have other objections to its form. Those objections should be made by October 23, 1998.
>
> In addition, I have concluded that it remains to be determined whether there was a settlement agreement between Consol and Boston Old Colony with respect to

---

3. The last issue has no relevance to the instant proceeding.

4. The Respondent BOC had previously paid the Petitioner $1,000,000 pursuant to the purported settlement agreement.

the excess exposure of Omni and Heston.... ‚ .

In addition, the issues of the liability for Heston and Omni for indemnity and contribution over and above the insurance coverage remain to be resolved....

Having received no objections to the Petitioner's proposed judgment order, on November 4, 1998, the Respondent judge entered the order. That order provided that "[i]n accordance with the Supreme Court of Appeals' July 17, 1998 decision, it is ORDERED and ADJUDGED that defendant Boston Old Colony Insurance Company pay Consolidation Coal Company the amount of One Million Dollars ($1,000,000.00)." After the Petitioner notified the court of a recent case that governed the calculation of prejudgment interest, the court entered a revised order on November 13, 1998, nunc pro tunc as of November 4, 1998.

For reasons not found in the record, the Respondent BOC raised no written objections prior to the entry of the November 4, 1998, order, nor did it file a motion pursuant to Rule 59[5] of the West Virginia Rules of Civil Procedure within ten days regarding the November 4, 1998, order. Two months later, however, on January 13, 1999, the Respondent BOC filed a "motion for reconsideration," requesting the Respondent judge to reconsider the November 4, 1998, order.

On April 1, 1999, the Respondent judge entered an order vacating the November 4, 1998, order. The Respondent judge concluded that the November 4, 1998, judgment order "was improvidently and prematurely entered." Then, on April 8, 1999, the Respondent judge, in an order, expressed that it was not the trial court's intention that the November 4, 1998, judgment order be a final order for appellate purposes pursuant to Rule 54(b) of the West Virginia Rules of Civil Procedure,

> based upon the fact that the Orders heretofore entered in this matter on November 4, 1998 and November 13, 1998, did not include the express determination required

by Rule 54(b) and that it failed to adjudicate all the issues between the parties including both those issues which remain to be decided between Consolidation Coal Company and Boston Old Colony Insurance Company on the one hand and those issues between Consolidation Coal Company and M.A. Heston, Inc. and Omni Drilling, Inc. on the other.

## II. ISSUES

### A.

█ The first issue which must be addressed is whether the November 4, 1998, order was a final order. The Petitioner argues that the November 4, 1998, order was final. Because the order was final, the Petitioner maintains that Rule 54(b) of the West Virginia Rules of Civil Procedure is not applicable to the order. Thus, the Petitioner asserts that the circuit court erroneously concluded that because the November 4, 1998, order did not contain the certification language of West Virginia Rule of Civil Procedure 54(b), in a case where other issues remain to be litigated against other parties, it was interlocutory in nature. The Respondent BOC, however, argues that the November 4, 1998, order was not final under the provisions of West Virginia Rule of Civil Procedure 54(b).

West Virginia Rule of Civil Procedure 54(b) provides:

> When more than one claim for relief is presented in an action, ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not

---

**5.** Rule 59(e) of the West Virginia Rules of Civil Procedure provides:

(e) *Motion to alter or amend a judgment.—* Any motion to alter or amend the judgment shall be filed not later than 10 days after entry of the judgment.

terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all of the claims and the rights and liabilities of all the parties.

*Id.*

■■■ This Court has previously stated that "[t]he key to determining if an order is final is not whether the language from Rule 54(b) of the West Virginia Rules of Civil Procedure is included in the order, but is whether the order approximates a final order in its nature and effect." Syl. Pt. 1, in part, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995). Moreover,

> [w]hether an order dismissing fewer than all of the parties or fewer than all the claims in a civil action, which does not contain the express determinations set forth in Rule 54(b) of the West Virginia Rules of Civil Procedure, was intended to be final and is therefore appealable before the entire action is terminated will be determined by this Court from all the circumstances and the terms of the order. The better practice for the circuit courts to follow is to expressly state or negate their intentions with respect to the finality of such an order within the body of the order.

Syl. Pt. 4, *Riffe v. Armstrong,* 197 W.Va. 626, 477 S.E.2d 535 (1996). That this Court affords great deference to the intent of the circuit court in its determination of whether an order is final for purposes of Rule 54(b) certification is indisputable. As we stated in *Province v. Province,* 196 W.Va. 473, 473 S.E.2d 894 (1996), when determining whether an order is ripe for Rule 54(b) certification, one of the prongs we review is "whether there is any just reason for delay." *Id.* at 479, 473 S.E.2d at 900. Regarding this prong, we previously have stated that "[o]rdinarily, an appellate court cannot properly evaluate this prong without knowing how the circuit court feels about separating these issues for appellate purposes. Indeed, the entire purpose of Rule 54(b) is to place this decision in the hands of the trial court who can best make this delicate balance." 196 W.Va. at 479–80, 473 S.E.2d at 900–01. Fi-

nally, until such order is final, "the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all of the claims and rights and liabilities of all the parties." W. Va. R. Civ. P. 54(b).

In the instant case, the record clearly indicates that it was the intent of the trial court that the November 4, 1998, order was not a final order. The trial court, in a March 12, 1999, hearing expressly stated that "it's my conclusion that I did not intend it [the November 4, 1998, order] to be a final and appealable order at that time." That conclusion was once again reflected in the lower court's April 8, 1999, order. The reason that the lower court made this determination was that there was considerable litigation left in the case, which is abundantly clear not only from the record, but also by reviewing our decision in *Consolidation Coal.* As we indicated in *Consolidation Coal,* the Respondent BOC purportedly agreed to pay the Petitioner the amount of insurance coverage which this Court determined to be available under the BOC policy in return for the Petitioner's agreement to release its claims for indemnity and contribution. *See supra* note 2. The issue of whether this purported settlement agreement existed was disputed factually. *See Consolidation Coal,* 203 W.Va. at 390, 508 S.E.2d at 107. Thus, this Court remanded this case for further factual development on the issue. *See id.* at 393, 508 S.E.2d at 110. The requisite factual development has never occurred. Until the record is developed factually as mandated by this Court, and until the lower court determines whether a settlement agreement existed between the Petitioner and the Respondent BOC, it is hard to discern the Petitioner's contention that it was automatically entitled to the $2,000,000 of available coverage upon remand. The Petitioner's reliance upon our decision in *Consolidation Coal* to support the proposition that the Petitioner was automatically entitled to the insurance proceeds under the BOC policy was misguided. It is clear that the lower court correctly acknowledged the necessity of further factual development of the record before any final orders in this matter could be entered below. Ac-

cordingly, we conclude that the lower court properly determined that the November 4, 1998, order was not a final order under the provisions of Rule 54(b) of the West Virginia Rules of Civil Procedure.

■ Even assuming, arguendo, that the November 4, 1998, order was a final order, the circuit court had authority to change the order, pursuant to West Virginia Rule of Civil Procedure 60(b). The Petitioner contends that the circuit court exceeded its jurisdiction by setting aside a judgment where: (1) no timely motion pursuant to West Virginia Rule of Civil Procedure 59 was filed following entry of judgment; (2) no grounds existed under West Virginia Rule of Civil Procedure 60(b) to set aside the judgment nor were any such grounds referenced in the Respondent judge's order; and (3) the four-month appeal period had expired prior to entry of the Respondent judge's order.[6] In contrast, the Respondent BOC maintains that if Rule 60(b) is applicable, the circuit court had authority to vacate its order under Rule 60(b)(6), which authorizes the court to grant such a motion "for any other reason justifying relief." *See* W. Va. R. Civ. P. 60(b)(6).

Rule 60(b) of the West Virginia Rules of Civil Procedure provides, in relevant part:

(b) *Mistakes; inadvertence; excusable neglect; unavoidable cause; newly discovered evidence; fraud, etc.*—On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is

no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court.

■ At the outset, we recognize that motions made under Rule 60(b) of the West Virginia Rules of Civil Procedure are addressed to the sound discretion of the trial court. Hence, our standard of review is that the court's ruling on such a motion will stand unless it constituted an abuse of discretion. *Intercity Realty Co. v. Gibson,* 154 W.Va. 369, 377, 175 S.E.2d 452, 457 (1970); *see also* Syl. Pt. 2, *Wolford v. Landmark Am. Ins. Co.,* 196 W.Va. 528, 474 S.E.2d 458, 462–63 (1996). This Court has also repeatedly held that

[a] court, in the exercise of discretion given it by the remedial provisions of *Rule* 60(b), W.Va. R.C.P., should recognize that the rule is to be liberally construed for the purpose of accomplishing justice and that it was designed to facilitate the desirable legal objective that cases are to be decided on the merits.

Syl. Pt. 6, *Toler v. Shelton,* 157 W.Va. 778, 204 S.E.2d 85 (1974); *accord* Syl. Pt. 2, *Foster v. Good Shepherd Interfaith Volunteer Caregivers, Inc.,* 202 W.Va. 81, 502 S.E.2d 178 (1998).

With the above-mentioned standard of review in mind, this Court agrees with the Respondent BOC's contention that if the November 4, 1998, order had been a final order,

---

**6.** *See* Syl. Pt. 2, *State ex rel. Davis v. Boles,* 151 W.Va. 221, 151 S.E.2d 110 (1966) ("An appellate court is without jurisdiction to entertain an appeal after the statutory appeal period has expired.")

**230**

the circuit court had the authority to vacate the order pursuant to Rule 60(b)(6). There existed a very good "reason justifying relief from the operation of the judgment." W. Va. R. Civ. P. 60(b)(6). That reason was that the circuit court entered the order granting the Petitioner an additional $1,000,000 in insurance coverage without first determining whether the settlement agreement under which the Petitioner was to receive the additional money even existed. This "reason justifying relief from the operation of the judgment" is well-supported by this Court's decision in *Consolidation Coal*, wherein all we definitely determined was the amount of coverage available to the Petitioner under the BOC policy. W. Va. R. Civ. P. 60(b)(6); *see Consolidation Coal*, 203 W.Va. at 393, 508 S.E.2d at 110 (concluding that "the circuit court erred by finding that the insurance policy provided only $1,000,000 in coverage, instead of $2,000,000 in coverage").

### B.

Having resolved the first issue, we easily dispense with the issue of whether the Petitioner is entitled to either a writ of mandamus and/or prohibition. "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. Pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

Further,

[i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

Applying the factors necessary for a writ of mandamus and prohibition to the instant case, it is evident that the Petitioner has failed to meet its burden. The circuit court has not made a decision which contradicts the Court's mandate in *Consolidation Coal*. All the circuit court did was to properly correct an order that was prematurely entered. In vacating the November 4, 1998, order, the circuit court has not erred as a matter of law. The circuit court simply acknowledge through its April 1, 1999, order and April 8, 1999, order that factual development was necessary prior to the entry of any final orders. Consequently, after the factual development occurs, another adequate remedy in the nature of a direct appeal exists. Because another adequate remedy exists and because the lower court has not erred as a matter of law in its rulings since remand, neither a writ of mandamus nor a writ of prohibition should issue.

Based on the foregoing, we deny the writ of prohibition and/or mandamus.

Writ denied.

Chief Justice STARCHER deeming himself disqualified, did not participate in the decision of this case.

Judge WATT, sitting by temporary assignment.

Justice SCOTT did not participate.