558 S.E.2d 349

Stewart B. LAW, Jr., Plaintiff
Below, Appellant

v.

MONONGAHELA POWER COMPANY, d.b.a. Allegheny Power, a Corporation, and State of West Virginia Bureau of Commerce, Division of Natural Resources, Public Land Corporation, and State of West Virginia Department of Transportation, Division of Highways, Defendants Below, Appellees

No. 29179.

Supreme Court of Appeals of
West Virginia.

Submitted Nov. 6, 2001.

Decided Dec. 12, 2001.

**552**

William C. Garrett, Elizabeth G. Farber, Gassaway, West Virginia, Attorneys for the Appellant.

Jeffrey A. Kimble, Robinson & McElwee, Clarksburg, West Virginia, Toni M. Nesselrotte, Fairmont, West Virginia, Attorneys for the Appellee, Allegheny Power.

Michael Kozakewich, Jr., Steptoe & Johnson, Clarksburg, West Virginia, Attorney for the Appellee, State of West Virginia.

PER CURIAM:

This is an appeal by Stewart B. Law, Jr., (hereinafter "Appellant") from a denial of a motion for reconsideration entered by the Circuit Court of Upshur County. The lower court had granted summary judgment in favor of Allegheny Power Company (hereinafter "APC"), the State of West Virginia Bureau of Commerce, Division of Natural Resources (hereinafter "DNR"), and the State of West Virginia Department of Transportation, Division of Highways (hereinafter "DOH"). The Appellant filed the underlying civil action alleging entitlement to a right of way or easement to his property through a locked access road near Stone Coal Lake in Upshur County. The Appellant contends that the lower court erred in denying his motion for reconsideration of a summary judgment entered in favor of the Appellees where numerous genuine issues of material fact existed and clarification of those facts was desirable to determine proper application of the law. Based upon a review of the record, arguments of counsel, and relevant precedent, this Court concludes that the lower court abused its discretion in denying the Appellant's motion for reconsideration.

## I. Facts

The fifteen-acre property in question, currently owned by the Appellant, was originally part of a forty-seven-acre tract of land purchased in 1879 by Amos R. Shoulders (hereinafter "the Shoulders tract"). In 1920, Mr. Shoulders sold five acres near County Road 7 to Mr. David Golden (hereinafter "the Golden tract").[1] Mr. Shoulders died in 1923, and his heirs further divided his property and conveyed parcels by various deeds.

In a February 12, 1925, deed from T.E. West to W.E. Robinson separating the fifteen-acre tract now owned by the Appellant from the Shoulders tract, an express provision was included for "a free right of way in and to said fifteen acres tract of land, which right of way is to extend in the most practical course or direction through the tract of land this day described in deed to the said T.E. West and the tract described in a deed of same date to the said Lillie Smith and to extend from said 15 acre tract of land to the tract of land now owned by David Golden, all of said tracts of land being a part of said

---

1. The Golden tract, consisting of five acres on the western edge of the original forty-seven acre Shoulders tract, either bordered or was very near to County Road 7, a public road which apparently served as access to the Shoulders tract.

Amos R. Shoulders tract of land...." The Appellant contends that such right of way was intended to create access from the fifteen-acre tract to County Road 7, west of the fifteen-acre tract.

Various other conveyances of the fifteen-acre tract were made from 1925 to the present, all referencing the right of way for ingress and egress to the fifteen-acre tract.[2] A 1970 conveyance referenced the right of way "to said 15 acres, more or less, of land, for use as a means of ingress and egress to and from same...."

On June 16, 1971, DOH entered into a written agreement with APC under which several public roads, including County Road 7, were to be abandoned and destroyed when Stonecoal Lake was created by APC. As part of this 1971 agreement, APC agreed to construct alternate roads to replace the destroyed public roads. APC purchased the remaining three tracts that were originally part of the Shoulders tract. Thus, of the original Shoulders property, only the Appellant's fifteen-acre tract is not currently owned by APC.

APC constructed Stonecoal Lake in 1972. By lease dated October 1, 1972, APC leased the certain properties surrounding the lake to the DNR. The Stonecoal Lake Wildlife Management Area (hereinafter "WMA") is managed by the DNR, "subject to all leases, liens, easement, rights of way, or other encumbrances, whether or not of record, now outstanding or created hereafter with respect to the premises." While the record is not entirely clear regarding what additional roads were constructed by APC, the DOH did eventually formally abandon County Road 7.

On September 26, 1996, the Appellant purchased the fifteen-acre tract of property in question. The deed included, verbatim, the reference to the 1925 deed and the right of way. The Appellant also purchased four other bordering tracts not originally part of the Shoulders tract, totaling 150 acres. A twenty-five-acre tract purchased by the Appellant lies between the fifteen-acre tract and County Road 14/3.[3]

The Appellant contends that a road constructed by APC, known as the "North Lake Road," is the alternate road contemplated by the 1971 agreement between DOH and APC. North Lake Road, which runs essentially parallel to the abandoned and submerged County Road 7, is gated and locked beyond a public access boat landing on Stonecoal Lake, and APC contends that North Lake Road is a private maintenance road rather than a replacement for County Road 7. Based upon information obtained from his predecessor in title, the Appellant requested a key to the gate at the French Creek Game Farm, and his request was denied.[4] The Appellant then requested a key from APC. APC allegedly informed the Appellant that it would obtain a key for him, but the Appellant never received the key.

On November 14, 1997, the Appellant filed a complaint in the lower court, seeking an easement and right of way on North Lake Road in order to gain access to his fifteen-acre tract. In the alternative, the Appellant

---

**2.** Howard J. Dowell, owner of the fifteen-acre tract from 1957 to 1970, submitted an affidavit on December 14, 1999, indicating that he used the right of way from his fifteen-acre tract to access County Road 7. Forrest Summers, whose father had owned the entire Shoulders tract, stated in his affidavit that the owners of all the tracts subdivided from the Shoulders tract used the right of way to access County Road 7. Mr. Christopher Poling, the Appellant's immediate predecessor in title, indicated that when he purchased the property, he was told that he "could have a key to the lock to the gate on the access road by the lake.... This road was built to replace the original road that was flooded when the lake was put in." Mr. Poling did not request a key, but he was informed that a key was available at French Creek Game Farm.

**3.** Specifically, the fifteen-acre tract lies west of the twenty-five acre tract, and County Road 14/3 borders the twenty-five acre tract on its eastern edge.

**4.** Some individuals, namely the DOH, DNR, oil, gas, and mineral owners, and individuals in need of access to certain cemeteries, were given keys to the access gates. The Appellant submitted affidavits from former owners indicating that several individuals owning property abutting County Road 7 believed that North Lake Road had been constructed as a replacement road for County Road 7, since North Lake Road generally ran parallel to the old County Road 7 roadbed.

sought damages for loss of his right of way and enjoyment of his property. The Appellant contends that his fifteen-acre tract is now, for all practical purposes, landlocked. The Appellees questions that assertion, emphasizing that a portion of the total 150 acres owned by the Appellant borders County Road 14/3, which could also provide access to the adjoining fifteen-acre tract from the east.

Subsequent to discovery, the Appellees filed a joint motion for summary judgment on November 24, 1999. The Appellant filed a December 16, 1999, memorandum in opposition to the motion for summary judgment, alleging that genuine issues of material fact existed and outlining those issues. The lower court conducted a hearing on the motion for summary judgment on December 21, 1999, and granted summary judgment against the Appellant by order dated January 5, 2000. The lower court held that the applicable two-year statute of limitations had expired and that even if the statute did not render the Appellant's case moot, he had been divested of the easement by adverse possession since APC had used the properties for ten years adversely to the Appellant's interests.

On January 26, 2000, the Appellant filed a "Motion to Reconsider and/or Clarify" the January 5, 2000, order. There is disagreement among the parties regarding whether this motion should be characterized as a Rule 60(b) motion, thereby failing to toll the running of the appeal period to this Court, or a Rule 59(e) motion, tolling the running of the appeal period.[5] The Appellant contends that he intended his motion for reconsideration as a Rule 59(e) motion and filed it within ten business days of his receipt of the January 5, 2000, order. The lower court denied the motion to reconsider by order entered September 18, 2000, and the Appellant filed his petition for appeal of that denial with this Court on January 16, 2001.

## II. Motions Under Rule 59(e) and Rule 60(b)

The appellate standard of review in this matter is dependent upon resolution of the issue of whether the Appellant's January 26, 2000, "Motion to Reconsider and/or Clarify" is deemed a Rule 60(b) motion or a Rule 59(e) motion.[6] In syllabus point one of *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974), this Court explained that "[a] motion made pursuant to Rule 60(b), W.Va.R.C.P., does not toll the running of the appeal time of eight months [now four months] provided by West Virginia Code, Chapter 58, Article 5, Section 4, as amended." However, the filing of a Rule 59(e) motion "suspend[s] the running of the time for appeal, and that time does not begin to run until the entry of an order deciding the issues raised by the motion." *Riffe v. Armstrong*, 197 W.Va. 626, 636, 477 S.E.2d 535, 545 (1996), *holding modified on other grounds, Moats v. Preston County Comm'n*, 206 W.Va. 8, 521 S.E.2d 180 (1999).

This Court articulated the distinction between a Rule 59(e) and a Rule 60(b) motion in syllabus point three of *Lieving v. Hadley*, 188 W.Va. 197, 423 S.E.2d 600 (1992), as follows: "A motion which would otherwise qualify as a Rule 59(e) motion that is not filed and served within ten days of the entry of judgment is a Rule 60(b) motion regardless of how styled and does not toll the four month appeal period for appeal to this court." *See also Rose v. Thomas Memorial Hosp. Foundation, Inc.*, 208 W.Va. 406, 541 S.E.2d 1 (2000); *State ex rel. McDowell County Sheriff's Dep't v. Stephens*, 192 W.Va. 341, 452 S.E.2d 432 (1994). Likewise, this Court explained as follows in syllabus point

---

**5.** The Appellant did not appeal the summary judgment order to this Court, and we entertain the present appeal from the lower court's denial of the Appellant's motion for reconsideration.

**6.** Rule 60(b) of the West Virginia Rules of Civil Procedure provides, in relevant part:

On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1)[m]istake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence ...; (3) fraud ..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied ...; or (6) any other reason justifying relief[.]

Rule 59(e) of the West Virginia Rules of Civil Procedure provides that "[a]ny motion to alter or amend the judgment shall be filed not later than 10 days after entry of the judgment."

two of *Powderidge Unit Owners Association v. Highland Properties, Ltd.*, 196 W.Va. 692, 474 S.E.2d 872 (1996):

> When a party filing a motion for reconsideration does not indicate under which West Virginia Rule of Civil Procedure it is filing the motion, the motion will be considered to be either a Rule 59(e) motion to alter or amend a judgment or a Rule 60(b) motion for relief from a judgment order. If the motion is filed within ten days of the circuit court's entry of judgment, the motion is treated as a motion to alter or amend under Rule 59(e). If the motion is filed outside the ten-day limit, it can only be addressed under Rule 60(b).

■ The Appellant contends that the filing of his January 26, 2000, motion should be considered a Rule 59(e) motion tolling the running of the statute of limitations and permitting full appellate review of the underlying summary judgment action.[7] The Appellant cannot prevail in that argument, however, because the January 26, 2000, motion was not filed within ten days of the January 5, 2000, entry of the lower court's summary judgment order. The Appellant attempts to escape this conclusion by arguing that the ten-day time limitation did not begin to run until he received the order in the mail. This is not the correct standard, and the Appellant's argument in that regard fails. Applying the computation of time periods set forth in Rule 6(a) of the West Virginia Rules of Civil Procedure, the tenth day after the entry of the judgment, excluding weekends and holidays as the rule requires, was January 20, 2000. The motion was not filed until January 26, 2000. Consequently, the January 26, 2000, motion must be considered a Rule 60(b) motion and managed accordingly.[8]

### III. Appellate Review of Rule 60(b) Denial

■ The determination that a motion should be characterized as a Rule 60(b) motion is particularly significant in terms of scope of appellant review. In syllabus point three of *Toler*, this Court explained that "[a]n appeal of the denial of a Rule 60(b) motion brings to consideration for review only the order of denial itself and not the substance supporting the underlying judgment nor the final judgment order." In syllabus point four of *Toler*, this Court continued: "In reviewing an order denying a motion under Rule 60(b), W.Va.R.C.P., the function of the appellate court is limited to deciding whether the trial court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not shown in a timely manner."

■ Further, in syllabus point five of *Toler*, this Court explained that "[a] motion to vacate a judgment made pursuant to Rule 60(b), W.Va.R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." In assessing the issue of whether a lower court abused its discretion in denying Rule 60(b) relief, this Court explained as follows in syllabus point six of *Toler*: "A court, in the exercise of discretion given it by the remedial provisions of Rule 60(b), W.Va.R.C.P., should recognize that the rule is to be liberally construed for the purpose of accomplishing justice and that it was designed to facilitate the desirable legal ob-

---

7. As this Court explained in *Riffe* "[a] Rule 59(e) motion is the proper motion by which a summary judgment may be timely attacked." 197 W.Va. at 636, 477 S.E.2d at 545.

8. We consider the Appellant's motion as a Rule 60(b)(6) motion requesting relief for "any other reason justifying relief from the operation of the judgment." In footnote 22 of *Powderidge*, this Court stated:

> We continue to caution trial counsel that a "motion for reconsideration" is not explicitly sanctioned by the West Virginia Rules of Civil Procedure. There are good reasons to avoid the label. As a title, it is meaningless and, more significantly, when a motion is designated merely as a "motion for reconsideration," the party employing the term gives the court nearly unfettered discretion to determine its meaning and scope. These problems can be avoided by counsel labeling the motion according to the rule he or she believes is applicable.

196 W.Va. at 705 n. 22, 474 S.E.2d at 885 n. 22. A direct appeal from a summary judgment order is the more appropriate means through which to challenge the legal sufficiency of the ruling.

jective that cases are to be decided on the merits."[9]

In *Powderidge*, this Court explained that while Rule 60(b) is not an invitation for relitigation, it may be used to encourage a court to reconsider a prior determination. Specifically, this Court stated:

Although Rule 60(b) does not explicitly allow a party to file a motion for clarification and reconsideration, it is well established that a proper Rule 60(b) motion may urge a court to reconsider or vacate a prior judgment. Syl. pt. 3, *Lieving v. Hadley*, 188 W.Va. 197, 423 S.E.2d 600 (1992); *Bego v. Bego*, 177 W.Va. 74, 78, 350 S.E.2d 701, 705 (1986); *CNF Constructors, Inc. v. Donohoe Construction Co.*, 57 F.3d 395, 400–401 (4th Cir.1995) (per curiam); 11 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2857 at 254–64 (2nd ed.1995).

196 W.Va. at 704–05, 474 S.E.2d at 884–85 (footnote omitted).

The liberal construction of Rule 60(b), particularly within the context of a summary judgment determination, is evident in this Court's resolution in *Wolford v. Landmark American Ins. Co.*, 196 W.Va. 528, 474 S.E.2d 458 (1996). In *Wolford*, this Court encountered a situation in which a Rule 60(b) motion for relief from a summary judgment determination had been denied. Based upon this Court's determination that a genuine issue of material fact existed, the Court concluded that "the denial of the appellant's Rule 60(b) motion concerning Landmark constituted an abuse of discretion." *Id.* at 529, 474 S.E.2d at 459. The Court consequently remanded for further proceedings. *Id.*

Similarly, in *Foster v. Good Shepherd Interfaith Volunteer Caregivers, Inc.*, 202 W.Va. 81, 502 S.E.2d 178 (1998), this Court held, based upon the existence of genuine issues of material fact, that the lower court erred in granting summary judgment[10] and abused its discretion in denying the appellant's Rule 60(b) motion to vacate its order of dismissal. *Id.* at 85, 502 S.E.2d at 182.

In *State ex rel. Consolidation Coal Co. v. Clawges*, 206 W.Va. 222, 523 S.E.2d 282 (1999), this Court again emphasized the liberal construction afforded a Rule 60(b) inquiry and utilized a Rule 60(b)(6) motion to permit an order to be vacated.

There existed a very good "reason justifying relief from the operation of the judgment." W.Va. R. Civ. P. 60(b)(6). That reason was that the circuit court entered the order granting the Petitioner an additional $1,000,000 in insurance coverage without first determining whether the settlement agreement under which the Petitioner was to receive the additional money even existed.

*Id.* at 230, 523 S.E.2d at 290. Thus, this Court has repeatedly employed a Rule 60(b)(6) analysis to explore elements of the underlying judgment in the legitimate effort to determine whether a trial court abused its discretion in denying relief.

In the present case, although the Appellant has not succeeded in his attempt to persuade this Court that he has perfected a Rule 59(e) challenge to the underlying order of summary judgment, our liberal construction of Rule 60(b) and the attendant appellate review of a Rule 60(b) denial permits this Court to review this issue under an abuse of discretion standard. Our review for abuse of discretion necessarily entails some degree of consideration of the underlying claims presented to the lower court to determine whether the lower court abused its discretion in denying the Appellant's motion for reconsideration.

## IV. Circuit Court Standard for Consideration of Summary Judgment Motion

In syllabus point three of *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d

---

**9.** *See* Syl. Pt. 2, *Hamilton Watch Co. v. Atlas Container, Inc.*, 156 W.Va. 52, 190 S.E.2d 779 (1972) ("Inasmuch as courts favor the adjudication of cases on their merits, Rule 60(b) of the West Virginia Rules of Civil Procedure should be given a liberal construction.").

**10.** The lower court had "converted Good Shepherd's supplemental motion to dismiss into a motion for summary judgment pursuant to *West Virginia Rule of Civil Procedure*, Rule 56." 202 W.Va. at 84, 502 S.E.2d at 181.

770 (1963), this Court explained that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." In syllabus point three of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court explained as follows: "The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." As this Court emphasized in *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995), "[s]ummary judgment should be denied 'even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom.'" *Id.* at 59, 459 S.E.2d at 336 (*quoting Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir. 1951)).

■ This Court has also emphasized that, "[i]n determining on review whether there is a genuine issue of material fact between the parties, this Court will construe the facts 'in a light most favorable to the losing party.'" *Alpine Property Owners Association, Inc., v. Mountaintop Development Company*, 179 W.Va. 12, 17, 365 S.E.2d 57, 62 (1987) (*quoting Masinter v. WEBCO Co.*, 164 W.Va. 241, 242, 262 S.E.2d 433, 435 (1980)). The non-moving party is entitled to "the benefit of all inferences, as '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]'" *Williams v. Precision Coil*, 194 W.Va. 52, 59, 459 S.E.2d 329, 336, *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Likewise, we have concluded that "[t]he inferences to be drawn from the underlying affidavits, exhibits, answers to interrogatories, and depositions must be viewed in the light most favorable to the party opposing the motion." *Hanlon v. Chambers*, 195 W.Va. 99, 105, 464 S.E.2d 741, 747 (1995). "On a motion for summary judgment, neither a trial nor appel-

late court can try issues of fact; a determination can only be made as to whether there are issues to be tried. To be specific, if there is any evidence in the record from any source from which a reasonable inference can be drawn in favor of the nonmoving party, summary judgment is improper." *Id.* at 105, 464 S.E.2d at 747.

As we observed in *Armor v. Lantz*, 207 W.Va. 672, 535 S.E.2d 737 (2000), "[c]ourts must strenuously avoid assuming the role of trier of fact in ruling on motions for summary judgment:" *Id.* at 677, 535 S.E.2d at 742. "[W]here varying inferences may be drawn from the same evidence, we must view the underlying facts in a light most favorable to the non-moving party." *Id.* at 677, 535 S.E.2d at 742.

## V. The Appellant's Allegations of Error on Appeal to this Court

The Appellant contends that the lower court abused it discretion in denying his "Motion to Reconsider and/or Clarify" and that the lower court erred in granting the underlying motion for summary judgment because numerous genuine material issues of fact remained and clarification of those issues was necessary for proper resolution of this case. The Appellant asserts that genuine issues of material fact were raised regarding the manner in which the DOH abandoned roads submerged by the lake without providing adequate access to affected properties.[11] The Appellant further contends that a genuine issue of material fact exists with regard to whether North Lake Road, constructed by APC, should be considered a replacement road for County Road 7 or simply a maintenance road as APC contends.

The Appellant also contends that the lower court erred in finding that the Appellant had failed to establish a right of way from the Golden tract, now owned by APC, to County Road 7. The express easement granted by title used the phrase "to the Golden tract," but the Appellant contends that such reference could be properly interpreted as intend-

---

11. The Appellant maintains that the lower court erred in finding it significant that no action regarding access to North Lake Road had been taken by the Appellant's predecessors in title between 1974 and 1996. The lower court discussed this fact, as relevant to the manner in which prior owners gained access to the property

ing a method of access to County Road 7 at or near the Golden tract. The Appellant asserts that subsequent use of such access route created a prescriptive easement, even if the express language of the deed failed to create an easement through the Golden tract to County Road 7.

The Appellant also asserts that the lower court erred in ruling that the doctrine of adverse possession divested the Appellant of any rights to the easement. The Appellees maintain that any easement, whether by express language in the deed or by prescription, was extinguished through adverse possession since the maintenance road had been barricaded since 1972. The Appellant also contends that the lower court erred in finding that County Road 14/3 can be used as access to the fifteen-acre tract. The Appellant contends that it is not economically feasible to enter the fifteen-acre tract from County Road 14/3 and across the twenty-five-acre tract also owned by the Appellant. Thus, the Appellant maintains that the lower court erred in concluding that no easement by prescription or by necessity was supported by the facts.

The Appellant also maintains that the lower court erred in ruling that the statute of limitations barred any action filed after 1976 regarding the Appellees' closure of North Lake Road. The Appellant contends that North Lake Road is a public road, to which no statute of limitations applies where an individual is challenging his right to access. In the alternative, the Appellant contends that even if North Lake Road is a private road, he did not "discover" his cause of action against APC until he was denied access. He consequently maintains that the discovery rule tolled the statute of limitations. The Appellees assert that the discovery rule does not apply to toll the statute since no action was taken which prevented the predecessors

in title from discovering that the road was barricaded.

## VI. Discussion

 This Court has consistently held that "[t]he burden of proving an easement rests on the party claiming such right and must be established by clear and convincing proof." Syl. Pt. 1, *Berkeley Development Corp. v. Hutzler*, 159 W.Va. 844, 229 S.E.2d 732 (1976). Similarly, the burden of proving the termination of an easement, either by abandonment or adverse possession, is the party who claims that the easement has been terminated. *Strahin v. Lantz*, 193 W.Va. 285, 288, 456 S.E.2d 12, 15 (1995). *See Keller v. Hartman*, 175 W.Va. 418, 333 S.E.2d 89 (1985).

 In the present case, the lower court was presented with numerous factual assertions by all litigants. From the evidence presented, the following essential facts can be gleaned. County Road 7 was initially a public highway providing access to both the general public and any property owners who accessed their private property by traveling County Road 7. The fifteen-acre tract now owned by the Appellant became landlocked when it was divided from the Shoulders tract, and access to the public road was obtained by traveling west to County Road 7 across two other tracts of land. That access was set forth by express easement in 1925, as quoted above, and similar language was used to create an easement in the Appellant's deed.

The Appellees contend that the express easement provided access only *to* the Golden tract, rather than *through* the Golden tract to County Road 7. The Appellant counters that argument by asserting that the easement was created either through the express language of the deeds, by necessity,[12] or by prescription.[13] There is evidence in the rec-

---

12. Syllabus point four of *Berkeley Development Corp. v. Hutzler*, 159 W.Va. 844, 229 S.E.2d 732 (1976), provides as follows:

Where one owns and conveys a portion of his land which is completely surrounded by the retained land or partially by the land of the grantor and the land of others, without expressly providing a means of ingress and egress, and where there is no other reasonable means of access to the granted land, the law

implies an easement in favor of the grantee over the retained portion of the original land of the grantor.

13. This Court has explained the prerequisites of a prescriptive easement as follows in syllabus point two of *Post v. Wallace*, 119 W.Va. 132, 192 S.E. 112 (1937):

The open, continuous and uninterrupted use of a road over the lands of another, under *bona*

ord that the express language of the deeds created an easement at least to the Golden property, and the Appellant presented evidence that residents had consistently used that easement to access County Road 7. The consistency of use is also relevant to a determination of whether adverse possession by APC would have deprived the Appellant of use of his alleged easement. These issues were not developed sufficiently at the lower court level. The Appellant's assertions in this matter, as well as the refutations of the Appellees, created undetermined and material issues of fact with regard to the Appellant's current rights to use the easement for access to his property.

█ With regard to the Appellant's right to utilize North Lake Road, the 1971 agreement between APC and DOH is implicated. That agreement, in essence, provided that APC would relocate County Road 7 to provide access to property owners who utilized County Road 7 as access to their properties.[14] We find that further development is essential to determine whether the Appellant's rights have been violated by the abandonment and relocation procedures chosen by APC and DOH. When the State elected to abandon County Road 7, several concerns should have been identified, including relocation of roads for use by the general public and entitlement to alternate access or compensation for removal of access by certain property owners using County Road 7. It was incumbent upon the lower court to deter-

mine the manner in which the 1971 agreement affected the rights of the Appellant, with all inferences at the summary judgment stage being drawn in favor of the Appellant, as the non-movant.[15]

█ The agreement required APC to acquire fee title to all properties abutting the portions of the roads to be destroyed. The Appellant raised a genuine issue of material fact regarding whether APC properly obtained fee title, free of encumbrances. The title APC was obligated to obtain included whatever public or private rights-of-way historically served adjoining properties, whether arising before or after this State assumed responsibility for some public roads in 1933 and thereafter.[16] The extent to which APC obtained fee title, free of liens and encumbrances, is the very gravamen of this civil action. DOH relied upon APC's certification of title at its own peril. If, in fact, the lower court finds that the Appellant had a right of access to County Road 7, then DOH and APC may have effected a taking of an extremely valuable right of access for which the Appellant has not been compensated.[17] While the statutes governing the authority of DOH permit it to abandon public rights of way, the right of the public and abutting landowners to have a continued means of ingress and egress or just compensation is ignored where the abandonment powers are regarded as plenary.

*fide* claim of right, and without objection from the owner, for a period of ten years, creates in the user of such road a right by prescription to the continued use thereof.

**14.** The 1971 agreement provided that APC, then Monongahela Power, would construct alternate roads "generally at the locations designated in green on the print dated December, 1969." The copy of that print contained in the record before this Court is in black and white, and this Court cannot discern where County Road 7 was to be relocated according to that 1969 map. Nor is it clear from the record whether the lower court made that determination and considered it in regard to granting summary judgment.

**15.** *See Hall v. Pippin,* 984 S.W.2d 617 (Tenn.Ct. App.1998) (holding that owners of property abutting once public road continue to have private access easement over that road to their property

even after road loses its character as public road.); *Mason v. State,* 656 P.2d 465, 469 (Utah 1982) (concluding that abutting property owner's right to preserve status quo entitles owner to easement over abandoned public road only where and to extent necessary for ingress and egress to and from property).

**16.** The West Virginia Legislature repealed the county system of road maintenance in 1933 and adopted a statewide program. Thus, effective on July 1, 1933, counties relinquished authority over county and district roads to the West Virginia State Road Commission.

**17.** In syllabus point one of *State ex rel. Ashworth v. The State Road Commission et al.,* 147 W.Va. 430, 128 S.E.2d 471 (1962), this Court stated: "The right of access to and from a public highway is a property right of which the owner can not be deprived without just compensation."

■ A genuine issue of material fact also exists with regard to the Appellant's access to his property through County Road 14/3. The Appellees maintain that the Appellant does not need to use North Lake Road to access his property since County Road 14/3 borders another tract owned by the Appellant on the eastern border of the fifteen-acre tract in question. The Appellant, however, introduced evidence indicating that it was not economically feasible to utilize County Road 14/3 to access the fifteen-acre tract due to the difficult terrain. Again, in granting summary judgment, the lower court is obliged to draw inferences in favor of the non-movant. The issue of whether County Road 14/3 is a possible entrance for the fifteen-acre tract and whether access via North Lake Road is by necessity is another issue of material fact which has not been resolved.[18]

■ Application of the two-year statute of limitations and the discovery rule create additional issues of fact based upon the Appellant's contention that the discovery rule applies and tolls the statute of limitations. The Appellant contends that the 1971 agreement did not adequately address his property rights, alternate roads were not properly constructed, and his property became landlocked. The Appellant further contends that he did not discover this violation until he was denied access to the road leading to his property. Further development of the facts is necessary to determine the Appellant's entitlement to relief under his discovery rule argument. As this Court stated in *Stemple v. Dobson*, 184 W.Va. 317, 400 S.E.2d 561 (1990), also involving a statute of limitations

challenge based upon West Virginia Code 55–2–12(19), "[b]ecause there is a material question of fact with regard to when the plaintiffs' right of action accrued so as to commence the running of the statute of limitations, the matter was clearly a question for the jury." *Id.* at 322, 400 S.E.2d at 566.[19]

We also feel constrained to mention the issue of the burden to North Lake Road. Although the issue has not been squarely placed before this Court, there has been some indication that the Appellant seeks to construct a residential subdivision on his property and utilize North Lake Road as access. If this issue surfaces on remand, obvious questions of burden to the easement will be raised, and additional issues of fact may arise.

## VII. Conclusion

Upon review of the issues in the present matter, the January 5, 2000, summary judgment order, and the Appellant's January 26, 2000, motion for reconsideration, we conclude that the lower court abused its discretion in denying the Rule 60(b) relief. We find that the Appellant demonstrated "sufficient grounds for disturbing the finality of the judgment." Syl. Pt. 4, *Toler*, 157 W.Va. at 778, 204 S.E.2d at 86. This conclusion is particularly inescapable in light of the admonitions of syllabus point six of *Toler* cautioning a trial court to "recognize that the rule [Rule 60(b) ] is to be liberally construed for the purpose of accomplishing justice and that it was designed to facilitate the desirable legal objective that cases are to be decided on the merits."

---

**18.** The determination of whether an easement is "necessary" has been deemed a question of fact. *Black v. Steenwyk*, 333 Ark. 629, 970 S.W.2d 280, 283 (1998).

**19.** In syllabus point four of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997), this Court explained:

In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have

engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

*See* Syl. Pt. 1, *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988) ("The two year statute of limitation for a tort action arising from latent defects in the construction of a house begins to run when the injured parties knew, or by the exercise of reasonable diligence should have known, of the nature of their injury and its sources, and determining that point in time is a question of fact to be answered by the jury."); Syl. Pt. 4, *Hill v. Clarke*, 161 W.Va. 258, 241 S.E.2d 572 (1978) ("The question of when plaintiff knows or in the exercise of reasonable diligence has reason to know of medical malpractice is for the jury.").

The posture of this Court, as examined above, has consistently been that "it is incumbent upon a trial court to view the facts in [a summary judgment motion] in a light most favorable to the party against whom judgment is to be rendered." *Perrine v. Mert Development, Inc.*, 177 W.Va. 560, 562, 355 S.E.2d 53, 55 (1987), *citing Board of Educ. of the County of Ohio v. Van Buren and Firestone Architects, Inc.*, 165 W.Va. 140, 267 S.E.2d 440 (1980). Based upon the foregoing, we reverse the lower court and remand this matter with directions to grant the Rule 60(b) motion, set aside the summary judgment order, and proceed with this litigation in a manner consistent with this opinion.

Reversed and Remanded.

DAVIS, Justice, dissenting:

Appellees, Monongahela Power Company (hereinafter referred to as "Monongahela Power"), argued that the summary judgment issues in this case should not be considered because they were untimely filed. The majority opinion recognized that the case had a timeliness problem. Nevertheless, rather than affirming the summary judgment, the majority opinion established an unmanageable rule of law in order to address the merits of the summary judgment order. Due to the majority's departure from precedent, I am compelled to dissent.

A longstanding legal maxim adhered to by this Court is that "[t]he law comes to the help of those who are vigilant, and not to those who sleep on their rights." *Swann v.*

*Young*, 36 W.Va. 57, 70, 14 S.E. 426, 431 (1892). *Accord State v. Salmons*, 203 W.Va. 561, 569, 509 S.E.2d 842, 850 (1998); *Coleman v. Sopher*, 201 W.Va. 588, 601, 499 S.E.2d 592, 605 (1997); *State v. LaRock*, 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996); *Hoffman v. Wheeling Sav. & Loan Ass'n*, 133 W.Va. 694, 707, 57 S.E.2d 725, 732 (1950); *A.C. Fulmer Coal Co. v. Morgantown & K.R. Co.*, 57 W.Va. 470, 476, 50 S.E. 606, 608 (1905); Syl. pt. 6, *Holsberry v. Harris*, 56 W.Va. 320, 49 S.E. 404 (1904). We have explained this principle of law to mean that when attorneys are "careless, and [do] not attend to their interests in court, and [do] not watch the entries made of record, they must suffer the consequences of their folly. It is far better that they should suffer than that the rights of everybody else should be placed in jeopardy." *Braden v. Reitzenberger*, 18 W.Va. 286, 291 (1881). In the instant proceeding, Mr. Law slept on his rights to timely appeal the summary judgment order entered against him. Rather than allow Mr. Law to "suffer the consequences" for his lack of vigilance, the majority opinion has abandoned well-established principles of law.

### A. Procedural Posture of Case

The trial court granted summary judgment to Monongahela Power by order entered January 5, 2000. Under our rules, Mr. Law had four months in which to either file a petition for appeal of the summary judgment order or seek an extension of time within which to appeal from the trial court.[1] The record is

---

1. The appeal period is set out in W. Va.Code § 58-5-4 (1998) (Supp.2000) as follows:

No petition shall be presented for an appeal from any judgment rendered more than four months before such petition is filed with the clerk of the court where the judgment being appealed was entered: Provided, That the judge of the circuit court may, prior to the expiration of such period of four months, by order entered of record extend and reextend such period for such additional period or periods, not to exceed a total extension of two months, for good cause shown, if the request for preparation of the transcript was made by the party seeking such appellate review within thirty days of the entry of such judgment, decree or order.

Rule 3(a) of the West Virginia Rules of Appellate Procedure tracks the language of the statute and provides as follows:

No petition shall be presented for an appeal from, or a writ of supersedeas to, any judgment, decree or order, which shall have been rendered more than four months before such petition is filed in the office of the clerk of the circuit court where the judgment, decree or order being appealed was entered, whether the State be a party thereto or not; provided, that the judge of the circuit court may for good cause shown, by order entered of record prior to the expiration of such period of four months, extend and re-extend such period, not to exceed a total extension of two months, if a request for the transcript was made by the party seeking an appeal or supersedeas within thirty days of the entry of such judgment, decree or order. In appeals from administrative agencies, the petition for appeal shall be filed within the applicable time provided by the statute.

clear, and the majority opinion has conceded, that Mr. Law failed to file a petition for appeal of the summary judgment order within the four month time frame. Additionally, the majority opinion concedes that Mr. Law did not seek an extension of time within which to appeal from the trial court's ruling. Rather, instead of appealing the summary judgment order, Mr. Law filed a motion for reconsideration with the trial court on January 26, 2000. The trial court denied the motion for reconsideration on September 18, 2000—nine months after the summary judgment order had been entered. Mr. Law thereafter appealed the January 5, 2000, order granting summary judgment to Monongahela Power.

### B. Motion for Reconsideration

Prior to the majority's decision in this case, our law had been clear in holding that "[a] motion which would otherwise qualify as a Rule 59(e) motion that is not filed and served within ten days of the entry of judgment is a Rule 60(b) motion regardless of how styled and does not toll the four month appeal period for appeal to this court." Syl. pt. 3, *Lieving v. Hadley*, 188 W.Va. 197, 423 S.E.2d 600 (1992). Mr. Law filed his motion for reconsideration more than ten days after the summary judgment order was entered.[2] Consequently, the motion had to be treated as a Rule 60(b) motion.

When considering Mr. Law's Rule 60(b) motion, the majority opinion was bound, by precedent, to consider neither the substance of the issues decided by the summary judgment order nor issues which should have been raised during the summary judgment proceeding. "An appeal of the denial of a Rule 60(b) motion brings to consideration for review *only* the order of denial itself and not the substance supporting the underlying judgment nor the final judgment order." Syl. pt. 3, *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974) (Emphasis added). Jus-

tice Cleckley correctly observed in *Powderidge Unit Owners Ass'n v. Highland Props., Ltd.*, 196 W.Va. 692, 474 S.E.2d 872 (1996) that "the weight of authority supports the view that Rule 60(b) motions which seek merely to relitigate legal issues heard at the underlying proceeding are without merit. . . . In other words, a Rule 60(b) motion to reconsider is simply not an opportunity to reargue facts and theories upon which a court has already ruled." *Powderidge*, 196 W.Va. at 705–706, 474 S.E.2d at 885–886. Moreover, "[i]t is established also that a Rule 60(b) motion does not present a forum for the consideration of evidence which was available but not offered at the original summary judgment motion." *Powderidge*, 196 W.Va. at 706, 474 S.E.2d at 886.

Here, the majority opinion has done exactly what *Powderidge* rejected. The majority reversed the trial court's decision by revisiting matters decided by the summary judgment order. The majority did so because the Rule 60(b) motion was not properly framed. Contrary to our instruction in *Powderidge*, Mr. Law's 60(b) motion simply sought to relitigate issues that had been ruled upon by the circuit court at the summary judgment proceeding, or that should have been presented to the circuit court at that time. As a consequence of the majority's improper consideration of such issues, no summary judgment order will be final after the expiration of the four month appeal period. Indeed, litigants may now file Rule 60(b) motions seeking reconsideration of every issue that has been or should have been decided by summary judgment. Today's decision creates chaos for summary judgment orders. It has also transformed Rule 60(b) into a mechanism with which to attack the merits of *any* final order for which the appeal period has expired.

This was a simple case that should have been affirmed. "The plaintiff's lawyer should

---

**2.** Had Mr. Law filed his motion for reconsideration within ten days of the circuit court's entry of its order granting summary judgment, the running of the time to appeal the substantive issues addressed in connection with the summary judgment would have been halted pending entry of the circuit court's order on the motion for reconsideration. In syllabus point 7 of *James M.B. v.*

*Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995), we explained that "[a] motion for reconsideration filed within ten days of judgment being entered suspends the finality of the judgment and makes the judgment unripe for appeal. When the time for appeal is so extended, its full length begins to run from the date of entry of the order disposing of the motion."

have appealed the judge's order, or immediately filed a motion under Rule 59 of the West Virginia Rules of Civil Procedure." *Rose v. Thomas Mem'l Hosp. Found., Inc.*, 208 W.Va. 406, 415–16, 541 S.E.2d 1, 10–11 (2000) (Starcher, J., concurring). The majority opinion has turned a simple case into a procedural monster. The majority decision, in effect, has transformed Rule 60(b) into Rule 59(e). I cannot agree with such a result. "As the saying goes, if it looks like a duck, walks like a duck and quacks like a duck, it most probably is a duck." *Adkins v. West Virginia Dept. of Educ.*, 210 W.Va. 105, 109, 556 S.E.2d 72, 76 (2001) (Albright, J., dissenting).

Therefore, I respectfully dissent. I am authorized to state that Justice MAYNARD joins me in this dissenting opinion.